THOMPSON, Judge.
These appeals involve two cases that were consolidated at the trial level. May 0. Thompson (“Thompson”), now deceased, was the mother of Hattie Thompson Lide (“Lide”) and the grandmother of Kay L. Reid (“Reid”). Lide is the mother of Reid.
Thompson, on January 20, 1993, filed an action (“original action”) against Reid and SouthTrust Bank, N.A., to recover three certificates of deposit. On March 19, 1993, Thompson, pro se, filed a letter with the circuit clerk, dismissing her attorney, William H. McGowen, Jr., and demanding that he dismiss the action against Reid. McGowen filed a motion to withdraw on March 22, 1993, and that motion was then set for a hearing before the trial judge on April 9, 1993.
A letter dated April 9, 1993, was sent by M. Wayne Wheeler, counsel for Lide, to the trial judge, advising the judge that Lide had filed a petition on that date for guardianship and conservatorship against Thompson in the Probate Court of Jefferson County (hereinafter “guardianship action”).[1] A guardian ad litem was appointed to represent Thompson. In early April 1993, Thompson moved to North Carolina to live with Reid. The trial judge granted McGowen’s motion to withdraw from the original action on April 15, 1993. On April 22, 1993, SouthTrust filed an answer to the complaint in the original action. On May 3, 1993, Thompson filed a motion to dismiss the guardianship action with prejudice. On May 10, 1993, the trial court issued its order denying Thompson’s motion for dismissal in the guardianship action until such time as Thompson personally appeared before the trial court. The May 10, 1993, order also “froze” the funds from the certificates of deposit in dispute in the original action, which totaled approximately $57,000.
Thompson lived with Reid in North Carolina for a few months and then moved to a nursing home not far from Reid’s home. Thompson remained in North Carolina until her death in 1996.[2] After her move her Veterans Administration check was sent to her, and Thompson’s Social Security check was sent tó Reid. The $57,000 and all interest it accumulated remained in the conserva-torship.
Service of process was not completed in the guardianship action. The return notice of the server noted that the “person [being served (Thompson) ] may have moved out of state” on April 15, 1993. On May 14, 1993, Lide amended[1] her petition for guardianship and conservatorship against'Thompson to assert that Thompson was then residing at an address in North Carolina, and to request that the court send notice to Thompson at that address. The next day, May 15, 1993, *1192 the first of three notices of service by publication for the guardianship action was printed in the Alabama Messenger.
On July 1, 1993, the judge of probate ordered that James M. Tingle be appointed as guardian of and conservator for Thompson. Letters of guardianship and conserva-torship were issued to Tingle, and the order specified that “[flunds shall be used for support and maintenance [of Thompson].” The original action and the guardianship action were consolidated by order of the trial court.
During the next two and a half years, the parties litigated the consolidated actions in the Circuit Court of Jefferson County. Tingle, as conservator, made no payments from the conservatorship assets other than for costs and fees for the attorneys involved in the case. At least three motions were filed during the years to direct Tingle to use Thompson’s funds for her maintenance and support at the nursing home in which she lived in North Carolina. These motions were denied. On January 3, 1996, the trial court ordered that SouthTrust Bank turn over the proceeds from the certificates of deposit that were the subject of the original action to Tingle, as conservator, and ordered that the funds be used for the benefit of Thompson. At that time, Thompson had been moved from the nursing home.[3] The trial court ordered Tingle to hold the conservatorship assets until further order of the court.
Thompson died on May 2, 1996, in North Carolina. Reid filed her notice of appearance as executrix of Thompson’s estate on May 20, 1996. On July 2, 1996, a final order was entered by the trial judge that awarded fees and granted Tingle’s petition for final settlement of the conservatorship. Tingle filed a motion, as conservator, for a summary judgment in the original action. That motion was granted by the trial court on July 16, 1996. Reid appealed to the Supreme Court of Alabama in her individual capacity in the original action, and in her capacity as executrix of Thompson’s estate in the guardianship action. The Supreme Court of Alabama transferred the two appeals to this court, pursuant to § 12-2-7, Ala.Code 1975.
Although both parties raise a number of issues in their briefs, two are dispositive. The first issue concerns the original action filed by Thompson against Reid. The issue is whether the letter written by Thompson, and filed by her with the clerk’s office, which dismissed her attorney and instructed him to dismiss the original action against her granddaughter, constituted a dismissal of the original action under Rule 41, Ala.R.Civ.P.
Rule 41(a)(1), Ala.R.Civ.P., which governs voluntary dismissal of actions by the plaintiff, reads in part:
“By Plaintiff; By Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of this state, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii).... ”
It is undisputed that no responsive pleading had been filed by either the granddaughter or by SouthTrust Bank in the original action prior to the filing of Thompson’s letter, dated March 17, 1993, and filed on March 19, 1993, that dismissed her attorney and instructed him to dismiss the action against her granddaughter. Thompson’s letter read in part:
“Dear Lawyer McGowen:
I am hereby dismissing] you as my lawyer in the case of May C. Thompson v. Kay L. Reid, Circuit Court of Jefferson County, Alabama, case number 93-000476 [the original action], and demand that you dismiss this lawsuit immediately.”
The only argument made by James Tingle is that Reid has no standing to appeal on this issue because she is appealing in her individual capacity, rather than as Thompson’s executrix. Tingle’s argument is that only Thompson, the plaintiff in the original action, can raise the issue of her attempt to voluntarily dismiss the action. However, it is *1193 axiomatic that this dismissal constitutes a defense for Reid in that action.[4]
A voluntary dismissal under Ala.R.Civ.P. 41 terminates the action when the notice of the plaintiffs intent to dismiss is filed with the clerk. See Ala.R.Civ.P. 41, Hammond v. Brooks, 516 So.2d 614 (Ala.1987). The committee comments to Rule 41, Ala.R.Civ.P., note that the rule is “substantially the same as the corresponding federal rule.” See Ala. R.Civ.P. 41, Committee Comments on 1973 Adoption. In interpreting P.R.Civ.P. 41(a)(1), the Fifth Circuit stated:
“Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. So long as plaintiff has not been served with his adversary’s answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk. That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone.”
American Cyanamid Co. v. McGhee, 317 F.2d 295, 297 (5th Cir.1963).
We hold that Thompson’s letter constituted notice to the court of her wish to dismiss her case. The letter meets the requirements of Rule 41, Ala. R. Civ. P, in that it gives notice of the plaintiffs desire to dismiss the action, and it was filed with the clerk’s office. Because no answer or motion for summary judgment had been filed by any adverse party in the ease, no action was required, of the trial court. However, at the request of McGowen, the attorney that Thompson dismissed in her letter filed with the trial court on March 19, 1993, a hearing was set for April 9, 1993, on McGowen’s motion to withdraw pursuant to that letter.[5] The trial judge entered an order dated April 15, 1993, granting McGowen’s motion to withdraw. The trial court further ordered that Thompson proceed by designating counsel or proceeding pro se. This was error. The action, had been effectively dismissed; no action or order was required by the trial court to effectuate that dismissal. See Ala. R.Civ.P. 41(a)(1).
In his brief, Tingle argues that the trial court never ruled on his amended complaint in the original action or on Reid’s answer to the amended complaint, and that, therefore, there is no final judgment from which to appeal. The original action having been dismissed, the purported amended complaint was invalid; there could be no final judgment in the original action.
Because the original action was validly dismissed by Thompson, we do not reach the issues concerning the summary judgment in the original action.
The next issue presented by Reid, as executrix of Thompson’s estate, in her appeal from the guardianship action, is whether the Alabama courts had jurisdiction over Thompson. Specifically, Reid argues that Thompson never received service of process in the guardianship action.[6] In opposition, Tingle asserts only that'Thompson was a resident of Alabama, that Thompson had an “alleged” attorney, and that the guardian ad litem’s *1194 contact with Thompson put Thompson on notice of the proceedings in the Alabama courts.
The petition in the guardianship action against Thompson was filed by Lide on April 9, 1993. Service of process was attempted by the sheriff on either April 14 or April 15, 1993. The service of process notice was returned without service, indicating that Thompson was “not found” and that she might have moved to another state. Sometime in early April 1993, Thompson moved to North Carolina to live with Reid. Lide amended her guardianship petition on May 14, 1993, to notify the court of Thompson’s address in North Carolina and to request that Thompson be served by mail at that address. There is nothing in the record to indicate, nor do the parties argue, that service of process on Thompson in North Carolina was ever attempted. An affidavit of publication appears in the record, indicating that on May 15, May 22, and May 29, 1993, notice by publication was printed in the Alabama Messenger, a newspaper of general circulation in Jefferson County, Alabama.[7] The record contains no other documents regarding service of process on Thompson in the guardianship proceedings.[8]
Rule 4, Ala. R. Civ. P., dictates the rules governing service of process.
“Failure of proper service under Rule 4 deprives a court of jurisdiction and renders its judgment void. Shaddix v. Shaddix, 603 So.2d 1096 (Ala.Civ.App.1992). If a court lacks jurisdiction of a particular person, or if it denied that person due process, then the court’s judgment is void. Smith v. Clark, 468 So.2d 138 (Ala.1985). A void judgment must be set aside. Smith, supra. Furthermore, strict compliance with the rules regarding service of process is required. Aaron v. Aaron, 571 So.2d 1150 (Ala.[Ala.Civ.App.]1990).”
Ex parte Pate, 673 So.2d 427, 428-29 (Ala.1995). Further, “[a] court without jurisdiction cannot render a valid decision.” Berry v. Pike County Board of Education, 448 So.2d 315, 317 (Ala.1984) (citing Nigg v. Smith, 415 So.2d 1082 (Ala.1982)).
Service of process on Thompson was never perfected under Rule 4, Ala.R.Civ.P., in the guardianship action. The process server that attempted service on Thompson during the time Thompson was living in Alabama returned the notice as “not found.” Nothing in the record indicates that service was ever attempted, much less perfected, on Thompson by mail at her address in North Carolina, although Thompson’s address in North Carolina was in the case file in both Lide’s amended petition and in documents filed subsequently by Thompson. The lower courts seem to have concluded that jurisdiction was proper under notice by publication.
Rule 4.3, Ala.R.Civ.P., governs service of process by publication. That rule provides in part:
“(b) Residence Known; When Publication Appropriate. When the residence of a defendant is known and the action is one in which service by publication is permitted, service of process must first be attempted by one of the methods of service other than publication as is provided by Rule 4.1, if the defendant is a resident of this state, or Rule 4.2, if the defendant is not a resident of this state or is a resident of this state who is absent from the state, or Rule 4.4, if service on the defendant is to be effected in a foreign county.”
Ala.R.Civ.P. 4.3(b). Further, Rule 4.3 requires that an affidavit must be filed with the court before service by publication is attempted, stating that service of process could not be made, and the reason that service cannot be made. Ala.R.Civ.P. 4.3(d)(1). The valid reasons upon which service by publication may be based are that the whereabouts or identity of the defendant is unknown, that the defendant has been absent for more than 30 days since the filing of the complaint, or *1195 that the defendant was avoiding service of process. Id. After this affidavit is filed, the cierk “shall direct” that service be made be publication. Id.
We note that this court has held that “[fjailure to exercise due diligence in perfecting personal service of process precludes notice by publication.” Shaddix v. Shaddix, 603 So.2d 1096, 1098 (Ala.Civ.App.1992) (citing Sams v. Equitable Life Assurance Society of the United States, 402 So.2d 999 (Ala.Civ.App.1981)). We also note that once a party objects on the grounds of jurisdiction, as occurred here, the party may contest the action on the merits and still have the jurisdiction question preserved for appeal. Gaudin v. Collateral Agency, Inc., 624 So.2d 631, 633 (Ala.Civ.App.1993).
There is no affidavit filed with the court in the guardianship action averring that service could not be made on Thompson, as is required by Rule 4.3 on service of process by publication. Indeed, notice by certified mail was requested by Lide in her amended petition for guardianship, but this notice was never attempted. The requirements of Rule 4.3 on service of process by publication were clearly not met in this case. Other methods of service of process on Thompson not having been complied with, we have no alternative other than to hold that the lower courts never gained jurisdiction over Thompson in the guardianship action. Therefore, all orders relating to that action are void. See Smith v. Clark, 468 So.2d 138 (Ala.1985).
This court having declared that the lower courts never acquired jurisdiction over Thompson in the guardianship proceedings, the issue of whether the court complied with the incompetency statute is now moot[9]
We hold that the original action was properly dismissed upon the filing of Thompson’s letter on March 19, 1993, and that the lower courts never had jurisdiction over Thompson in the guardianship proceedings. Thus, all orders of the lower courts relating to the two actions are void. A void judgment will not support an appeal. Jones v. Sears, Roebuck & Co., 342 So.2d 16, 17 (Ala.1977). The lower courts are ordered to set aside those void orders. These appeals are due to be dismissed.
APPEALS DISMISSED.
YATES, MONROE, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., concurs in the result.

. The record reveals that Thompson’s attorney, McGowen, referred Lide to Wheeler on April 9, 1993. Wheeler represented Lide in the petition for guardianship and conservatorship[1] against Thompson. Thereafter, Wheeler represented James Tingle, the conservator appointed for Thompson as a result of Lide's petition for guardianship and conservatorship against Thompson.

. During the three years that this litigation was ongoing in the Alabama courts, Thompson was declared competent in North Carolina, and she attempted to have the Alabama courts relinquish jurisdiction to North Carolina.

. The petition for final settlement reveals that Tingle made the first and only disbursement for the support and maintenance of Thompson on March 6, 1996, in the amount of $94.97. Fees to the various attorneys involved in the case paid from conservatorship assets totaled approximately $26,000.

.Tingle does not argue that the letter does not constitute a dismissal of the original action, or . that Thompson was incompetent at the time she wrote that letter. Also, Tingle never argues or raises the issue of whether the amended complaint in the original action, filed by him as conservator for Thompson, would renew the original action under Rule 41, A.R.Civ.P. This amended complaint was filed on authority of the consolidation of the two cases during the guardianship (and conservatorship) proceedings. Because, later in this opinion, those guardianship proceedings are held to be invalid. Tingle had no authority under which to amend the original complaint.

. According to Lide’s deposition, immediately following this hearing, McGowen and Lide went to McGowen’s office, where Wheeler was contacted. Wheeler filed Lide’s petition for guardianship and conservatorship against Thompson on that date, April 9, 1993.

. Reid also argues that the court failed to comply with the Alabama Uniform Guardianship and Protective Proceedings Act, §§ 26-2A-1 through 26-2A-160, Ála.Code 1975.

. Publication first appeared the day after Lide amended her petition to show Thompson’s correct address.

. This action, which began in the Probate Court of Jefferson County, was eventually transferred to the Circuit Court of Jefferson County. The record indicates that, upon transfer to the circuit court, the court was notified that Thompson objected to jurisdiction, and the court noted the exception.

. § 26-2A-135(b) requires the court to order an examination (mental or physical) of the person to be protected by a physician designated by the court. Several motions were filed by Reid, Thompson, and eventually, the guardian ad li-tem, requesting this examination of Thompson; all were denied by the trial judge.