THOMPSON, Presiding Judge.
Richard E. Chesnut and Betty B. Ches-nut appeal from two separate judgments of the Madison Circuit Court that were entered against them in connection with their challenge of building permits (“the per *612 mits”) issued for the construction of a house next door to the Chesnuts’ house.
On June 3, 2013, the Chesnuts filed a civil action, case no. CV-13-901203 (“the civil action”), in the Madison Circuit Court against the City of Huntsville (“the city”), Denton-Niemitz Realty, LLC, and Guild Building & Remodeling, LLC (the two latter entities are hereinafter referred to collectively as “the builders”); we hereinafter refer to the Madison Circuit Court, insofar as it presided over the civil action, as “the trial court.”[1] On September 27, 2013, the builders filed a motion for a summary judgment, which the city joined on October 1, 2013. On December 23, 2013, the builders filed counterclaims against the Ches-nuts, alleging slander of title and seeking sanctions against them pursuant to the Alabama Litigation Accountability Act. On February 2, 2014, the Chesnuts filed a motion to dismiss the builders’ counterclaims pursuant to Rule 12(b)(2) and (6), Ala. R. Civ. P. As discussed more fully below, the trial court entered a summary judgment in favor of the city and the builders on the Chesnuts’ claims on March 14, 2014. On April 16, 2014, the builders submitted a notice of dismissal to the trial court, in which they stated that they were voluntarily dismissing their counterclaims that were still pending against the Ches-nuts. On May 16, 2014, the Chesnuts filed a motion to alter, amend, or vacate the judgment. That motion was denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P. The Chesnuts filed a timely notice of appeal to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. This court assigned appeal No. 2140043 to the appeal from the civil action.
On July 8, 2013, while the civil action was pending, the city filed a motion to dismiss the civil action on the ground that the Chesnuts had not appealed the issuance of the permits to the Board of Zoning Adjustment of the City of Huntsville (“the board”). Therefore, the city argued, the Chesnuts had not exhausted their administrative remedies before filing the civil action. On July 31, 2013, the Chesnuts filed an appeal of the issuance of the permits with the board. The board determined that the Chesnuts’ appeal was untimely. On August 30, 2013, the Chesnuts appealed the board’s decision (“the administrative appeal”) to the Madison Circuit Court and the administrative appeal was assigned case no. CV-13-902031; we hereinafter refer to the Madison Circuit Court, insofar as it presided over the administrative appeal, as “the circuit court.”[2] The board filed a motion to dismiss, which was converted to a motion for a summary judgment. On April 9, 2014, the circuit court entered a summary judgment upholding the board’s determination that the Ches-nuts’ appeal of the issuance of the permits had been untimely. The Chesnuts filed a timely motion to alter, amend, or vacate the circuit court’s judgment. The circuit court denied the postjudgment motion, and the Chesnuts filed a timely notice of appeal to our supreme court. Our supreme court transferred the appeal to this court pursuant to § 12-2-7(6). This court assigned appeal no. 2140042 to the appeal from the administrative appeal. On the Chesnuts’ motion, this court consolidated the appeals *613 from the civil action and from the administrative appeal.
Before reaching the merits in this case, we must first determine whether the judgment in the civil action is final for purposes of appeal. In the civil action, the trial court’s summary judgment against the Chesnuts did not address the builders’ counterclaims. Therefore, at the time the summary judgment was entered in March 2014, it was not a final judgment. See Sexton v. Sexton, 42 So.3d 1280, 1282 (Ala.Civ.App.2010) (“A judgment is not final if it fails to completely adjudicate all issues between the parties.”). Generally, this court’s jurisdiction extends only to final judgments. Webb v. Mitchell, 124 So.3d 139, 146 (Ala.Civ.App.2013); § 12-22-2, Ala.Code 1975. “ ‘ “[Jjurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.” ’ ” Harley v. Anderson, 167 So.3d 355, 361 (Ala.Civ.App.2014) (quoting Sexton, 42 So.3d at 1282, quoting in turn Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)).
A month after the summary judgment was entered, the builders filed a notice of dismissal of their counterclaims pursuant to Rule 41(a)(1), Ala. R. Civ. P. That rule provides that, subject to certain rules and statutes not applicable in this case,
“an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before sendee by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action.”
(Emphasis added.)
Rule 41(a)(2), Ala. R. Civ. P., provides:
“Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiffs instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiffs motion to dismiss, the action may be dismissed but the counterclaim shall remain pending for adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.”
(Emphasis added.)
If one of the requirements of Rule 41(a)(1) were met, that is, if the Chesnuts, as the adverse party, did not serve either an answer or a motion for a summary judgment as to the counterclaims, or if the parties to the civil action stipulated to the dismissal, the trial court was not required to enter an order dismissing the counterclaims. If, on the other hand, neither of the requirements set forth in subdivisions (i) or (ii) of Rule 41(a)(1) were met, the trial court was required to enter an order dismissing the counterclaims before the judgment can be considered final for purposes of appeal.
“ ‘The purpose of Rule 41(a) is to facilitate voluntary dismissals but to limit them to an early stage of the proceedings before issue is joined.’ Rule 41 (Committee Comments on 1973 Adoption) (emphasis added). If the conditions of Rule 41(a)(1) are satisfied, dismissal is automatic, that is, ‘[n]o order of the court is required .... [and] the notice [of dismissal] terminates the action. ...’ 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2363, at 439-41 (3d ed.2008) (footnotes omitted) (commenting on Fed.R.Civ.P. 41(a)(1)); see also Greene v. Town of Cedar Bluff, 965 *614 So.2d 773, 777-79 (Ala.2007). Dismissal under Rule 41(a)(1) is a question of law and, therefore, is reviewable de novo. See Matthews v. Gaither, 902 F.2d 877, 879 (11th Cir.1990) (reviewing Rule 41, Fed.R.Civ.P.).
“On the other hand, if the conditions of Rule 41(a)(1) are not met, ‘ “voluntary-dismissal can only be upon court order [under Rule 41(a)(2)] and the court is given broad powers to prevent harassment of or inconvenience to the defendant by an arbitrary dismissal at this advanced stage of the case.” ’ Milliken v. South Realty Co., 628 So.2d 928, 930 (Ala.Civ.App.1993) (quoting Committee Comments on 1973 Adoption of Rule 41). See Rule 41(a)(2) (‘Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiffs instance save upon order of the court and upon such terms and conditions as the court deems proper.’).”
Riverstone Dev. Co. v. Nelson, 91 So.3d 678, 681 (Ala.2012).
In the civil action, there is no indication in the record that the trial court had before it a “stipulation of dismissal signed by all parties who have appeared in the action” as required by Rule 41(a)(l)(ii). Therefore, we must determine whether the Chesnuts filed an answer or a motion for a summary judgment as to the builders’ counterclaims before the builders filed their notice of dismissal.
In Ex parte Scannelly, 74 So.3d 432, 436-37 (Ala.2011), our supreme court discussed the effect of a notice of dismissal pursuant to Rule 41(a)(1):
“ ‘It is well settled that “[dismissal on motion under [subdivision (2) of Rule 41(a) ] is within the sound discretion of the court.” Bevill v. Owen, 364 So.2d 1201, 1202 (Ala.1979); see also MetFuel, Inc. v. Louisiana Well Serv. Co., 628 So.2d 601 (Ala.1993). By contrast, review of a dismissal pursuant to subdivision (1) is de novo. See Marex Titanic, Inc. v. Wrecked & Abandoned Vessel, 2 F.3d 544, 545 (4th Cir.1993); Matthews v. Gaither, 902 F.2d 877, 879 (11th Cir.1990). This is so, because “Rule 41(a)(1) affords the plaintiff an unqualified right to dismiss” its action before the filing of an answer or a summary-judgment motion. Clement v. Merchants Nat’l Bank of Mobile, 493 So.2d 1350, 1353 (Ala.1986) (emphasis added); see also Marex Titanic, Inc., 2 F.3d at 546. Conversely, Rule 41(a)(1) affords the trial court no discretion. See Williams v. Ezell, 531 F.2d 1261, 1264 (5th Cir.1976).
“ ‘The effect of a notice of dismissal pursuant to Rule 41(a)(1) was succinctly explained in Reid v. Tingle, 716 So.2d 1190, 1193 (Ala.Civ.App.1997). There, the Court of Civil Appeals said:
“‘“A voluntary dismissal under Ala. R. Civ. P. 41 terminates the action when the notice of the plaintiffs intent to dismiss is filed with the clerk. See ... Hammond v. Brooks, 516 So.2d 614 (Ala.1987). The committee comments to Rule 41, Ala. R. Civ. P., note that the rule is ‘substantially the same as the corresponding federal rule.’ See Ala. R. Civ. P. 41, Committee Comments on 1973 Adoption. In interpreting [Fed.] R. Civ. P. 41(a)(1), the Fifth Circuit stated:
“““Rule 41(a)(1) is the shortest and surest route to abort a complaint when it is applicable. So long as plaintiff has not been served with his adversary’s answer or motion for summary judgment he need do no more than file a notice of dismissal with the Clerk. That document itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life *615 and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a •perfu/nctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone.’
“ ‘ “American Cyanamid Co. v. McGhee, 317 F.2d 295, 297 (5th Cir. 1963).”
“ ‘716 So.2d at 1193 [first emphasis added, second emphasis added in Reid, and third and fourth emphasis added in Ex parte Scannelly].
‘“Although cases involving a Rule 41(a)(1) dismissal “are not perfectly analogous to cases in which the ... court lacks subject matter jurisdiction, both contexts present the question of the court’s continuing power over litigants who do not, or no longer, have a justiciable case before the court.” Chemiakin v. Yefimov, 932 F.2d 124, 128 (2d Cir.1991). Thus, it is sometimes stated that a Rule 41(a)(1) dismissal deprives the trial court of “jurisdiction” over the “dismissed claims.” Duke Energy Trading & Mktg., L.L.C. v. Davis, 267 F.3d 1042, 1049 (9th Cir.2001); see Safeguard Business Sys., Inc. v. Hoeffel, 907 F.2d 861, 864 (8th Cir.1990); see also Gambale v. Deutsche Bank AG, 377 F.3d 133, 139 (2d Cir.2004); Netwig v. Georgia Pacific Corp., 375 F.3d 1009, 1011 (10th Cir.2004); Meinecke v. H & R Block of Houston, 66 F.3d 77, 82 (5th Cir.1995); Williams v. Ezell, 531 F.2d 1261, 1264 (5th Cir.1976) (“The court had no power or discretion to deny plaintiffs’ right to dismiss or to attach any condition or burden to that right. That was the end of the ease and the attempt to deny relief on the merits and dismiss with prejudice was void.”).
“ ‘Similarly stated, “[t]he effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought.” In re Piper Aircraft Distrib. Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir.1977). Moreover, “ ‘[i]t carries down with it previous proceedings and orders in the action, and all pleadings, both of plaintiff and defendant, and all issues, with respect to plaintiffs claim.’ ” Id. (quoting 27 C.J.S. Dismissal and Nonsuit § 39 (1959)).... ’
“[Ex parte Sealy, L.L.C.,] 904 So.2d [1230,] 1234-36 [(Ala.2004)]. It is clear, as Scannelly argues, that in the absence of service of an answer or a motion for summary judgment by Toxey, she did, in fact, possess an unqualified right to dismiss her complaint without the need for intervention by the Bessemer Division.”
(Some emphasis added; some emphasis in original.)
The procedural posture of this case at the time the builders filed their notice of dismissal presents an unusual set of circumstances in relation to the filing of a notice of dismissal pursuant to Rule 41(a)(1)®. Although a summary judgment had already been entered on the builders’ and the city’s motion for a summary judgment, the builders did not even file their counterclaims against the Chesnuts until after they had filed their motion for a summary judgment. Rule 41(a)(1) makes clear that the “adverse party ” must have filed an answer or a motion for a summary judgment before the notice of dismissal is filed. At the time the builders filed their notice of dismissal, the Chesnuts, as the adverse parties to the counterclaims, had not filed an answer to the pending counter *616 claims or a motion for a summary judgment as to the counterclaims.
Although we have found no Alabama law directly on point, we note that this court has stated that “[a] bona fide motion is certainly not a pleading [including an answer] within the intendment of Rule 7 of the Alabama Rules of Civil Procedure.” Kuhns v. Coussement, 412 So.2d 779, 782 (Ala.Civ.App.1981). Moreover, federal cases interpreting Rule 41(a), Fed.R.Civ. P., which is similar to Rule 41(a), Ala. R. Civ. P., have held that “[a] motion to dismiss for failure to state a claim for relief does not have the same preclusionary effect” as the filing of an answer for purposes of Rule 41(a). Roddy v. Dendy, 141 F.R.D. 261, 262 (S.D.Miss.1992)(citing Carter v. United States, 547 F.2d 258 (5th Cir.1977)); see also Nix v. International Ass’n of Machinists & Aerospace Workers, 452 F.2d 794, 797-798 (5th Cir. 1972)(same). As mentioned, “[t]he committee comments to Rule 41 state that this rule is substantially the same as the federal rule, and we normally consider federal cases interpreting the federal rules of procedure as persuasive authority.” Hammond v. Brooks, 516 So.2d 614, 616 (Ala.1987). Thus, based on the authority cited, we conclude that the Chesnuts’ Rule 12(b) motion to dismiss, which, we note, contained no affidavits or other materials that might have converted the motion to dismiss to a motion for a summary judgment, did not constitute an answer.
We are cognizant that Rule 41 is designed to limit voluntary dismissals “ ‘to an early stage of the proceedings before issue is joined. ’ ” Riverstone Dev. Co., 91 So.3d at 681. However, because of the builders’ delay in filing their counterclaims, those issues had not been “joined” at the time the March 2014 summary judgment was entered on the Chesnuts’ claims against the city and the builders. Because the Chesnuts had not filed an answer to or a motion for a summary judgment regarding the builders’ counterclaims, and because the merits of the counterclaims had not been reached or the “issues joined,” we conclude that, under the rare circumstances of this case, the trial court was not required to enter an order “granting” the builders’ notice of dismissal of the counterclaims. Accordingly, the summary judgment entered in the civil action is a final judgment for purposes of appeal.
We turn now to the merits of the Ches-nuts’ appeals. In their statement of the issues, the Chesnuts set forth four issues: (1) whether the trial court erred in entering a summary judgment in favor of the city and the builders in the civil action; (2) whether'the trial court erred in denying their motion to alter, amend, or vacate the judgment in the civil action; (3) whether the circuit court erred in entering a summary judgment in favor of the board in the administrative appeal; and (4) whether the circuit court erred in denying their motion to alter, amend, or vacate the judgment in the administrative appeal. In the argument portion of their brief on appeal to this court, however, the Chesnuts do not address the issues individually. Instead, they present one 42-page argument that addresses the issues in both matters, the separate judgments, the two distinct records in each matter, and the parties that are involved in each matter. The reader, therefore, is left to discern which issue and/or judgment the Chesnuts are discussing at any given time. Nonetheless, we will address the issues individually as they were set forth in the “Statement of the Issues” in the Chesnuts’ brief.
We first note that nowhere in the Chesnuts’ argument do they address the propriety of the denial of their post-judgment motion in either the civil action or the administrative appeal. Because the *617 two issues are not discussed in the argument portion of the Chesnuts’ brief, they are deemed waived. Tucker v. Cullman-Jefferson Cntys. Gas Dist., 864 So.2d 317, 319 (Ala.2003) (stating that issues not raised and argued in brief are waived).
To reach a determination as to the other issues raised on appeal, a short recitation of the facts — which are essentially undisputed — is necessary. The materials the parties submitted in favor of and in opposition to the motion for a summary judgment filed by the builders and joined by the city in the civil action indicate the following. In 1983, the Chesnuts purchased a house and the adjacent lot to the east of their house, which was in a Huntsville neighborhood that had been established in 1908. The neighborhood is zoned as a “Resident 1-B” district. In October 2012, one of the builders, Denton-Niemitz Realty, LLC (“Denton-Niemitz”), purchased the house on the west side of the Chesnuts’ house. The house Denton-Niemitz purchased was a single-family house with the usual sewerage, water, and utility connections, a driveway, and a landscaped yard. In other words, it was a “developed lot.” On October 24, 2012, Denton-Niemitz obtained a permit to raze the house. Denton-Niemitz hired Guild Building & Remodeling, LLC (“Guild”), which demolished the Denton-Niemitz house.
Denton-Niemitz also applied for two building permits that would allow it to construct a new house (“the new house”) and a detached garage on the lot where the demolished house had stood. Jim McGuffey, the zoning-enforcement coordinator for the city, conducted an investigation to ensure that the new house would meet the applicable zoning ordinances. In his affidavit, McGuffey said that he determined that, because the new house was to be constructed on the site where a single-family house had been and where sewer, water, and utility connections already existed, the new house was being constructed on a “developed lot,” to which a particular setback line applied, as opposed to an “undeveloped lot,” to which a different setback line applied.
The city’s zoning ordinances applicable to Resident 1-B districts provide that the minimum required depth of a front yard from streets that are not on “major arteri-als” is 30 feet. 1989 Huntsville Zoning Code, Article 12.2.4. An exception to the 30-foot setback line is found in Huntsville Zoning Code, Article 73.7.4, which provides:
“Front yards. Where the developed lots within one hundred (100) feet on the same side of the street of any undeveloped lot have a greater or lesser front yard than required herein, the front yard of such undeveloped lot shall be within five (5) feet of the average front yard; provided no front yard shall be less than twenty (20) feet except in a Residence C-l district, and further provided this section shall not apply to lots fronting on major streets as established by the Major Street Plan.”
On January 29, 2013, the city issued the permits and construction began on the new house. The front of the new house, which has been completed, is 30.17 feet from the front property line, in compliance with Article 12.2.4. In his affidavit, Richard Ches-nut stated that, “fwjhen framing began on the front portion of the new residence, I realized that the new residence, when completed, would entirely block the view of my home from any vehicular or pedestrian traffic travelling east” on his street.
Richard Chesnut contacted McGuffey on May 3, 2013, with his concern that the new house did not comply with the applicable setback-line requirement and requested that the zoning code be enforced. Subse *618 quently, Richard Chesnut had a survey-performed on the setback lines of the new-house and existing houses on his street and determined that, in his opinion, the new house should have a setback line of 45.68 feet, a difference of 15.51 feet from the actual front of the house. He also met with the builders and other city officials about what he believed was a violation of the zoning code. When no action was taken, the Chesnuts filed the civil action in the trial court on June 3, 2013.
In entering the summary judgment in the civil action, the subject of appeal no. 2140043, the trial court found that, in his role as the zoning-enforcement officer for the city, McGuffey had determined that the site of the new house was a developed lot and, therefore, was not subject to the provisions of Article 73.7.4. The trial court wrote: “In making this determination, [McGuffey] considered the building application, the site plans, house plans, the location, the coverage and buildable area, the nature of the lot, a platted lot equipped with utility lines and sewer access, possessing a building site upon which a prior home existed.” The trial court stated that MeGuffey’s interpretation of the term “developed lot” “is reasonable and a permissible construction of the term.”
On appeal the Chesnuts assert a number of grounds in support of their contention that the trial court ei’red in entering the summary judgment in the civil action, including contentions that the trial court erred in construing MeGuffey’s interpretation of Articles 12.2.4 and 73.7.4 as “permissible”; that, when McGuffey issued the permits, he used an “extralegal dictionary definition” of “developed” and “undeveloped”; that McGuffey ignored a city-council mandate that he did not have the power to permit construction that, the Chesnuts say, did not conform with the zoning code; and that McGuffey and the city ignored well established rules of statutory construction and ignored their statutory mandate to administer ordinances according to their.literal terms.
The Chesnuts agree that the site of the new house was a “developed” lot as long as the older house had remained standing. However, they contend that as soon as the old house was razed, the site reverted to an undeveloped lot. In support of their contention, the Chesnuts submitted the affidavit of Joseph A. Snoe, a law school professor who teaches a course in property and land-use planning, who opined that, in context, in Article 73.7.4 the use of the word “ ‘undeveloped’ in its ordinary’usage means without a structure.” Accordingly, the Chesnuts contend, the setback exception found in Article 73.7.4 was applicable to the new house.
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial *619 evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 10388-39 (Ala.2004). “Where, as here, however, all the basic facts are undisputed and the matter is one of interpretation or of reaching a conclusion of law by the court, the court may grant a motion for summary judgment.” Studdard v. South Central Bell Tel. Co., 356 So.2d 139, 141 (Ala.1978)(citing Bible Baptist Church v. Stone, 55 Ala.App. 411, 316 So.2d 340 (1975)).
The terms “developed” and “undeveloped” are not defined in the Huntsville Zoning Code. Thus, we must turn to the rules of statutory construction to give meaning to those terms. •
“ ‘City ordinances are subject to the same general rules of construction, as are acts of the Legislature. S & S Distrib. Co. v. Town of New Hope, 334 So.2d 905 (Ala.1976). In John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala.1988), [our supreme court], quoting Clark v. Houston County Comm’n, 507 So.2d 902, 903-04 (Ala.1987), set out the following general rules of statutory construction, which also apply to the construction of municipal ordinances:
“ ‘ “ ‘The fundamental rule of statutory construction is-to ascertain and give effect to the intent of the [city council] in enacting the [ordinance]. Advertiser Co. v. Hobble, 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the [city council] should be gathered from the language of the [ordinance] itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala.1978). If the [ordinance] is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the [ordinance] and examine results that will flow from giving the language in question one particular meaning rather than another. Studdard v. South Central Bell Telephone Co., 356 So.2d 139 (Ala.1978); League of Women Voters v. Renfro, supra.’ ” ’
“Ex parte City of Orange Beach Bd. of Adjustment, 833 So.2d 51, 55-56 (Ala.2001). ‘When interpreting an ordinance, each word or phrase must be given meaning so that no part is rendered void, superfluous, contradictory, or insignificant. Ordinances should be read in pari materia when relevant.’ 1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 30:6 (7th ed.2009) (footnotes omitted). ‘[T]he whole [ordinance] under construction should be examined and, if possible, each section should be given effect.’ Employees’ Ret. Sys. of Alabama v. Head, 369 So.2d 1227, 1228 (Ala.1979). ‘ “ ‘ “There is a presumption that every word, sentence, or provision [of an ordinance] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.” ’ ” ’ Surtees v. VFJ Ventures, Inc., 8 So.3d 950, 970 (Ala.Civ.App.2008) (quoting Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000), quoting in turn Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim. App.1997)). ‘Instead of taking one isolated and narrowly construed sentence of [a section in an ordinance], we should *620 look to the entire framework of the [ordinance], the intents and purposes of the [ordinance] and the means by which it has been given construction, effect and operation during its years of existence.’ Jordan v. City of Mobile, 260 Ala. 393, 401, 71 So.2d 513, 520 (1954).”
City of Mobile v. Grizzard, 109 So.3d 187, 190-91 (Ala.Civ.App.2012); see also Grand Harbour Dev., LLC v. Lattof, 127 So.3d 1230, 1236-37 (Ala.Civ.App.2013) (applying rules of statutory construction to subdivision regulations of the City of Orange Beach); see also Zegarelli v. Montevallo Planning & Zoning Comm’n, 37 So.3d 824, 827-28 (Ala.Civ.App.2009) (applying rules of statutory construction to city zoning ordinances).
“Although a court should give deference to an agency’s interpretation of an agency rule or a statute implemented by the agency, that deference has limits. When it appears that the agency’s interpretation is unreasonable or unsupported by the law, deference is no longer due. Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996) (‘[A] court accepts an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable.’ (emphasis added)). As our supreme court has explained:
“ ‘The correct rule is that an administrative interpretation of the governmental department for a number of years is entitled to favorable consideration by the courts; but this rule of construction is to be laid aside where it seems reasonably certain that the administrator’s interpretation has been erroneous and that a different construction is required by the language of the statute.’
“Boswell v. Abex Corp., 294 Ala. 334, 336, 317 So.2d 317, 318 (1975).”
Alabama Dep’t of Revenue v. American Equity Inv. Life Ins. Co., 169 So.3d 1069, 1074 (Ala.Civ.App.2015).
Additionally, “[interpretations of an act by the administrative agency charged with its enforcement, though not conclusive, are to be given great weight by the reviewing court.” Hulcher v. Taunton, 388 So.2d 1203, 1206 (Ala.1980). Moreover, our supreme court has held that, absent a compelling reason otherwise, appellate courts give great weight to the statutory interpretation of the agency charged with the administration of the statute or ordinance. Ex parte Emerald Mountain Expressway Bridge, 856 So.2d 834 (Ala.2003); see also Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996) (“[I]n interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable.”).
In this case, McGuffey explained in his affidavit that his job as zoning-enforcement coordinator requires him to, among other things, review applications for building permits and related permits and issue or decline those permits in conformity with the Huntsville Zoning Code.[3] In making determinations as to whether a specific permit complies with zoning requirements, McGuffey said, he relies on his “experience, the context and purpose of the Zoning Ordinance of the City of Huntsville, as I understand and interpret it, and resources including, but not limited to, ‘[A] Planner’s Dictionary,’ ” a reference *621 book that includes a collection of terms used in all aspects of land-use planning and the preparation of zoning ordinances. “A Planner’s Dictionary,” relevant excerpts of which were attached as exhibits in support of the motion for a summary judgment in the civil action, defines “undeveloped land” as “land in its natural state.” It defines “developed property” as “property or a lot upon which significant site improvements, such as utility installations, paving, and in many instances, the construction of one or more structures has occurred.” McGuffey said that, because a single-family residence had already been on the lot in question, and because “sewer and water and utility connections existed on the lot,” he determined that the site of the new house was “developed” property. The trial court found that McGuffey’s interpretation was “a reasonable and permissible construction.”
In asking this court to reverse the trial court’s judgment, the Chesnuts have essentially asked this court to accept their interpretation of the terms “developed” and “undeveloped” over McGuffey’s interpretation and to hold the trial court in error for accepting an interpretation different than their own. After reviewing the record in the civil action, we conclude that McGuffey’s interpretation of what constitutes “developed” property for purposes of enforcing the city’s zoning code is supported by substantial evidence, and there is no compelling reason to reject that interpretation. See Ex parte Emerald Mountain Expressway Bridge, supra.
As mentioned, in asserting that the trial court erred in entering the summary judgment in favor of the city and the builders in the civil action, the Chesnuts say that McGuffey did not have the power to permit construction that did not conform to the city’s zoning code. McGuffey, as the city’s zoning-enforcement coordinator, was the person responsible for the day-to-day operations of ensuring that applications for building permits were in compliance with the zoning code. The Chesnuts did not contend that the duty rested with any other person. Furthermore, because McGuffey determined that the site of the new house was a developed lot, the setback line from the front boundary of the property was required to be 30 feet. There is no dispute that the front of the new house is 30.17 feet from the front boundary; thus no variance was required. There is no evidence in the record to suggest that McGuffey exceeded his discretion in authorizing the permits to the builders.
Similarly, we find no merit to the Chesnuts’ contention that McGuffey improperly referred to “A Planner’s Dictionary” because, they say, it was an “extralegal” dictionary. They cite no authority for the proposition that agencies — or courts — cannot rely on what the Chesnuts call an “extralegal” dictionary definition in interpreting statutes or ordinances. In fact, courts often refer to “extralegal” resources in interpreting statutes. See, e.g., Alabama Dep’t of Revenue v. American Equity Inv. Life Ins. Co., 169 So.3d at 1073 (using definitions found in Merriam-Webster’s Collegiate Dictionary to interpret statutes); Thomas v. Merritt, 167 So.3d 283, 294 (Ala.2013)(same); Board of Zoning Adjustment of Trussville v. Tacata, Inc., 142 So.3d 624, 632 (Ala.Civ.App.2013)(using definitions found in Merriam-Webster’s Collegiate Dictionary to interpret a city’s sign ordinance). In this case, the ordinary — or to use the Chesnuts’ term, “literal” — meaning of “develop” in the context of land usage is “to make suitable for commercial or residential purposes.” Merriam-Webster’s Collegiate Dictionary 341 (11th ed.2003). It is reasonable to believe, therefore, that a *622 cleared lot with sewerage, water, and utility infrastructure in place has been made suitable for commercial or residential purposes — that is, as McGuffey determined, that it is a developed lot.
Moreover, to prohibit agencies from using definitions peculiar to the subject matter of the agency, in this case zoning and land use — that is, terms of art relevant to zoning matters — would defeat the purpose of giving deference to agencies’ interpretations of their own statutes or ordinances. We conclude that the Chesnuts have failed to demonstrate that the trial court erred in entering a summary judgment in favor of the city and the builders in the civil action, appeal no. 2140043.
As to appeal no. 2140042, the Chesnuts contend that the circuit court erred in granting the board’s motion for a summary judgment on the ground that the Ches-nuts’ appeal of the issuance of the permits to the board was untimely. They assert that, in dismissing their appeal, the board violated their right to procedural due process because, they say, the 15-day period that the board asserted the Chesnuts had to appeal the granting of the permits was found only in an unpublished resolution and was not contained in the zoning code itself. In other words, they argue, they were not given notice of the time in which they had to appeal.
In § ll-52-80(c), Ala.Code 1975, the legislature authorized municipalities to establish boards of adjustment to hear appeals and to establish procedures relating to such appeals. That statute provides:
“(c) Appeals to the board of adjustment may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer. Such appeal shall be taken within a reasonable time, as provided by the rules of the board, by filing with the officer from whom the appeal is taken and with the board of adjustment a notice of appeal specifying the grounds thereof. The officer from whom the appeal is taken shall transmit forthwith to the board all papers constituting the record upon which the action appealed was taken. An appeal stays all proceedings in furtherance of the action appealed from unless the officer from whom the appeal is taken certifies to the board of adjustment after the notice of appeal shall have been filed with him that by reason of facts stated in the certificate a stay would in his opinion cause imminent peril to life or property. Such proceedings shall not be stayed otherwise than by a restraining order which may be granted by the board of adjustment or by a court of record on application on notice to the officer from whom the appeal is taken and on due cause shown. The board of adjustment shall fix a reasonable time for the hearing of the appeal, give public notice thereof, as well as due notice to the parties in interest, and decide the same within a reasonable time. Upon the hearing any party may appear in person or by agent or by attorney.”
(Emphasis added.)
Article 92.3 of the zoning code provides, in relevant part, that
“[ajppeals to the board may be taken by any person aggrieved by any officer, department, or board of the city affected by any decision of the zoning administrator. Such appeal shall be taken within a reasonable time, as provided by the rules of the board, by filing with the zoning administrator and with the board of adjustment a notice of appeal specifying the grounds thereof.”
Article 92.2 provides that records of all official actions of the board “shall be public record.” It follows, therefore, that the *623 rules of the board are a matter of public record available to the Chesnuts. Resolution 92-3 of the board, which was adopted in 1992 and is included as Article IV, Section 2, of the board’s bylaws, provides: “The board will not . hear any application [for a hearing before the board] unless the application is filed within 15 days of the date the applicant was aggrieved by any decision of the Director of the [city’s] Inspection Department.”
The board moved to dismiss the Ches-nuts’ administrative appeal of its decision to the circuit court. However, because it attached exhibits referencing matters outside the pleadings, the circuit court treated the motion as one for a summary judgment and allowed the Chesnuts to respond. See Rule 12(b), Ala. R.App. P.
The materials the parties submitted to the circuit court indicated that the permits at issue were granted on January 29, 2013. In its motion, the board pointed out that, by the Chesnuts’ own admission, the latest they became aware of the issuance of the permits was on May 3, 2013, when Richard Chesnut spoke to McGuffey about them. Therefore, the board said, even giving the Chesnuts the benefit of that late date and assuming that the time for their appeal began to run as of the date of their actual knowledge of the permits, an assumption with which this court does not necessarily agree, they had until no later than May 18, 2013, to file a notice of appeal to the board regarding the permits.[4] However, the board said, rather than appealing to the board, the Chesnuts first filed a civil action on June 3, 2013. Not until July 31, 2013, after the board had moved to dismiss the civil action on the ground that the Ches-nuts had failed to exhaust their administrative remedies, did the Chesnuts finally file a notice of appeal to the board.
Even if there is merit to the Ches-nuts’ contention that the board’s failure to “publish” the 15-day requirement prevented them from filing their appeal within the time established by the board, their due-process argument still must fail under the facts of this case. Both § ll-52-80(c) of the Alabama Code and Article 92.3 of the city’s zoning code provide that appeals to the board must be made within a “reasonable time.” The Chesnuts lived next door to where the new house was under construction; thus, they were easily able to monitor the day-to-day progress of the construction. Nonetheless, they waited six months after construction began on the new house to appeal the issuance of the permits to the board. Even if the Ches-nuts were given the benefit of calculating the time in which they had to appeal from the date they believed that the new house did not meet zoning requirements, i.e., May 3, 2013, they waited almost an additional three months before filing their notice of appeal to the board. Moreover, the evidence- is undisputed that, by the time the Chesnuts filed their notice of appeal to the board, construction on the new house had been completed. We conclude that, as a matter of law, the Chesnuts’ attempt to appeal the issuance of the permits after the construction of the structure at issue had been completed was not reasonable.
Furthermore, contrary to the Chesnuts’ assertions, the board and its agents did not act to deprive them of their right to due process.. The Chesnuts’ failure to receive a hearing before the board to challenge the issuance of the permits was caused by their own failure to- file a timely challenge, not because of any conduct by the board. *624 Accordingly, the circuit court did not err in entering the summary judgment upholding the board’s determination that the Ches-nuts’ appeal was untimely.
For the reasons set forth above, the judgments entered in both the civil action and the administrative appeal- are affirmed.
2140042 — AFFIRMED.
2140043 — AFFIRMED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. Richard Chesnut is an attorney who practices in Huntsville. When the civil action was filed, all the Madison circuit judges recused themselves. A retired judge from another circuit was appointed to preside over the civil action.

. Once again, because Richard Chesnut practices law in Madison County, all the Madison circuit judges recused themselves. A judge from another circuit was appointed to preside over the administrative appeal.

. Article 91.1 of the zoning code provides that the zoning code “shall be administered and enforced by the administrative official designated” by the zoning administrator. Thus, the code provides the authority for McGuffey to issue the permits at issue in his role as zoning-enforcement coordinator.

. There is no allegation that the builders did not comply with notice requirements before seeking the permits.