683 So.2d 980 (1996)
Ex parte STATE DEPARTMENT OF REVENUE.
(Re LL & E PETROLEUM MARKETING, INC. v. STATE DEPARTMENT OF REVENUE).
1950195.
Supreme Court of Alabama.
June 7, 1996.
Rehearing Denied September 6, 1996.
*981 Jeff Sessions, Atty. Gen., Ron Bowden, Asst. Atty. Gen. and Chief Counsel for Department of Revenue, and John J. Breckenridge, Asst. Atty. Gen. and Asst. Counsel for Department of Revenue.
Joseph G. Stewart, F.A. Flowers III and Gregory F. Harley of Burr & Forman, Birmingham, for Respondent.
Bruce P. Ely and Michael J. Valezis of Tanner & Guin, P.C., Tuscaloosa, for Business Council of Alabama, Amicus Curiae.
Jerry L. Bassett of Legislative Reference Service and as Code Commissioner and Robert L. McCurley, Jr., representing himself as director of the Alabama Law Institute, both supporting the position of the State Department of Revenue, Amici Curiae.
INGRAM, Justice.
This case involves the statutory construction of a specific provision of Alabama's Gasoline Excise Tax Act (hereinafter the "Act"). Specifically, is the particular kind of naphtha[1] involved in this case included within the Act's definition of "gasoline," codified at Ala. Code 1975, § 40-17-30(1)?
For the procedural history and a statement of the facts of this case, see the opinion of the Court of Civil Appeals. LL & E Petroleum Marketing, Inc. v. State Department of Revenue, 683 So.2d 978 (Ala.Civ.App. 1995).
At the outset, we note that neither the Act passed by the legislature nor the original volume of the 1975 Code contained a comma after the word "naphtha" in § 40-17-30(1). That subsection, defining "gasoline," read: "GASOLINE. Gasoline, naphtha and other liquid motor fuels or any device or substitute therefor commonly used in internal combustion engines...." However, in the 1993 replacement volume for Title 40, the Michie Company added a comma after the word "naphtha." Citing State v. Marshall, 14 Ala. 411 (1848), the Court of Civil Appeals stated, "[Where] the codified version of an act of the *982 legislature varies from the act as adopted, the act controls." 683 So.2d at 979. Based on this statement from Marshall, that court concluded that the 1993 version (with the inclusion of the comma) did not apply and further determined that the "naphtha" involved in this case was not included in "gasoline," as that word was defined in the Act. Specifically, it concluded that the term "other liquid motor fuels" modifies and restricts the word "naphtha," and that because the naphtha at issue here was of a type not suitable for use as a motor fuel and not commonly used in internal combustion engines, it was not "gasoline" and therefore was not subject to the gasoline excise tax. We granted the Department of Revenue's petition for a writ of certiorari.
This Court has held that, by the process of adopting the entire Code, the legislature repeals any portion of the original legislation and prior codification not present in that adoption. See Ex parte Coker, 575 So.2d 43 (Ala.1990). In other words, the adoption of the entire Code supersedes the original enactments and any prior codification. After this Court decided Coker, the legislature refined the codification process and began the current practice of annually codifying legislation. Under this new procedure, the Code commissioner continually reviews the manuscript of the Code and directs the Code publisher to publish replacement volumes and an annual supplement that incorporates into the Code the most recent acts of a general and permanent nature. Once the annual supplement and the replacement volumes are published, they are reviewed by the Code commissioner, who prepares an annual codification bill to adopt the replacement volumes and annual supplement. This Court, however, has not considered the question whether this process has the same effect as a codification of the entire Code for the purpose of resolving conflicts between the Code and the original act. In other words, we have not determined if these cumulative supplements also supersede the original enactment. Nevertheless, because we find that the 1993 supplement is not applicable here, we need not address this issue now. Furthermore, we are not convinced that the placement of the comma after the word naphtha makes any difference in the interpretation of this provision.
We agree with the Court of Civil Appeals that the 1993 supplement is not applicable here, but not for the reason stated by that court. The legislature adopted the replacement volume containing § 40-17-30(1) on April 5, 1994. See Act No. 305, § 1, 1994 Ala.Acts. The Governor also signed the bill on that day. The sales of naphtha made the basis of this action occurred almost two years before that date. Therefore, we need not determine whether the 1993 version of § 40-17-30(1) contained in the replacement volume actually superseded the original act. That version does not apply to this case because, even if it did supersede the original act, it did so after the sales, as well as after the complaint in this case was filed. Furthermore, as noted above, we are not convinced that the addition of the comma makes any difference in the interpretation of this provision.
Now, we must determine whether naphtha that is not used for motor vehicle purposes is within the statutory definition of "gasoline," for purposes of the excise tax on gasoline.
The Alabama gasoline tax is levied on the sale, use, consumption, distribution, storage, or withdrawal of gasoline in Alabama. Section 40-17-30(1) defines "gasoline" as "[g]asoline, naphtha and other liquid motor fuels or any device or substitute therefor commonly used in internal combustion engines." There is no dispute that the naphtha at issue is a highly volatile hydrocarbon not commonly used in internal combustion engines.
LL & E argues that the naphtha at issue is not included in the statutory definition of "gasoline," because, it argues, this naphtha is not used in internal combustion engines. The commissioner of revenue, the chief administrative law judge, and the circuit court disagreed with this argument and concluded that the plain wording of the statute must govern and that § 40-17-30(1) clearly includes naphtha as "gasoline," without qualification as to how it is commonly used. We agree.
*983 The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Gholston v. State, 620 So.2d 719 (Ala.1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says. IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala.1992).
Section 40-17-30(1) defines "gasoline" in three parts: "[1] gasoline, [2] naphtha and [3] other liquid motor fuels or any device or substitute therefor commonly used in internal combustion engines." Gasoline and naphtha are included within the definition regardless of how they are used or intended to be used. The phrase "commonly used in internal combustion engines" does not relate to gasoline or naphtha, but rather modifies only the phrase "and other liquid motor fuels or any device or substitute therefor." Consequently, because the legislature specifically included "naphtha" within the definition of "gasoline," we hold that naphtha must be considered to be gasoline for purposes of the excise tax. The plain wording of the statute must govern, and this section clearly includes naphtha as gasoline, without qualification as to how it is commonly used. This construction is further supported by Ala.Code 1975, § 40-17-31(a), which provides that the excise tax is levied on "any use" of gasoline in this state.
"Every distributor, refiner, retail dealer, storer or user of gasoline shall collect and pay over to the State Department of Revenue an excise tax of $.07 per gallon plus a supplemental excise tax of $.05 per gallon upon the selling, use or consumption, distributing, storing or withdrawing from storage in this state for any use of gasoline as defined or otherwise referred to in this article...."
(Emphasis added.)
We also point out that it is well established that in interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable. Alabama Metallurgical Corp. v. Alabama Public Service Commission, 441 So.2d 565 (Ala.1983). Absent a compelling reason not to do so, a court will give great weight to an agency's interpretations of a statute and will consider them persuasive. Moody v. Ingram, 361 So.2d 513 (Ala.1978).
The judgment of the Court of Civil Appeals is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and SHORES, HOUSTON, COOK, and BUTTS, JJ., concur.
MADDOX and KENNEDY, JJ., dissent.
MADDOX Justice (dissenting).
In construing the provisions of Alabama's Gasoline Excise Tax Act, and specifically the provisions of § 40-17-30(1), Ala.Code 1975, which defines "gasoline" for the purposes of that Act, the majority holds that the Legislature intended to impose an excise tax on "naphtha," whether it was used as a liquid motor fuel[2] or not. In doing so, the majority concludes that the Legislature's definition of "gasoline" encompasses all forms of naphtha. I disagree.
Judge Yates, writing for the Court of Civil Appeals, examined the statute and held that the Legislature intended to levy the excise tax on naphtha only when it was used as a liquid motor fuel. She ascertained legislative intent by noting the placement of a particular comma and the use of the word "other" in the definitional part of the statute.[3] I agree *984 with the Court of Civil Appeals in its determination of legislative intent, but not because of the placement of the comma or the effect of any legislative enactment of the Code commissioner's changes to the statute.
This Court has held that "[i]n the area of statutory construction, the duty of a court is to ascertain the legislative intent from the language used in the enactment." Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala.1990). The majority cites Ex parte Coker, 575 So.2d 43 (Ala.1990), for the proposition that "infirmities of legislative procedure in enacting an original act are cured when that act is incorporated into a code and the code is adopted by the legislature." Coker, 575 So.2d at 46. The Alabama Law Institute has filed an amicus brief in this case, asking us not to change the rule that when the Legislature subsequently adopts a Code containing a change in a statute that was made by the Code commissioner, we assume that the Legislature intended to make the change. That is sound law, but there is no need to apply that principle here, in my opinion, because I can ascertain the legislative intent from a reading of the statute itself, with or without the comma.
It is clear to me that the use of the word "other," which follows the word "naphtha" in § 40-17-30(1), Ala.Code 1975, restricts the term "naphtha," for tax purposes, to that naphtha that is used as a liquid motor fuel only. All parties agree that the particular naphtha in question here is not suitable for use as a motor fuel.
The Department of Revenue argues that its administrative interpretation of Alabama's Gasoline Excise Tax Act allows the Department to impose the tax on naphtha without regard to how the product is used. Although I recognize that absent a compelling reason to the contrary, interpretations of a statute by a state agency charged with administering the statute are considered persuasive, Moody v. Ingram, 361 So.2d 513 (Ala.1978), I also recognize that this Court has held that "`[i]f a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust the court will assume that the legislature intended that which is workable and fair.'" Hamilton v. Autauga County, 289 Ala. 419, 429, 268 So.2d 30 (1972), quoting State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 233-34, 66 So.2d 726, 731 (1953). In addition, "[w]here the language of a taxing statute is reasonably capable of two constructions, the interpretation most favorable to the taxpayer must be adopted." Alabama Farm Bureau Mutual Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984).
For the foregoing reasons, I must respectfully dissent.
NOTES
[1] "Naphtha," as defined in Webster's Ninth New Collegiate Dictionary (1990), is "1: any of various volatile often flammable liquid hydrocarbon mixtures used chiefly as solvents and diluents; 2. PETROLEUM."
[2] Until its amendment in 1995, § 40-17-1, Ala. Code 1975, read as follows: "As used in this article, the term `motor fuel' shall include diesel fuel, tractor fuel, gas oil, distillate, kerosene, jet fuel, or any substitutes or devices therefor when sold, distributed, stored, or withdrawn from storage in this state for use in the operation of any motor vehicle upon the highways of this state."
[3] "(1) GASOLINE. Gasoline, naphtha, and other liquid motor fuels or any device or substitute therefor commonly used in internal combustion engines; provided, that nothing in this article shall be held to apply to those products known commercially as `kerosene oil,' `fuel oil,' or `crude oil' when used for lighting, heating, or industrial purposes." Ala.Code 1975, § 40-17-30(1) (original Vol. 21 and 1985 Repl.Vol. 21); Ala.Code 1940, Tit. 51, § 646; Act No. 772, § 1, 1953 Ala.Acts 1036; Act No. 847, § 1, 1951 Ala.Acts 1477.