THOMAS, Judge.
American Equity Investment Life Insurance Company (“the taxpayer”) is an out-of-state insurance company that does business in Alabama. The taxpayer is subject to the Alabama Business Privilege Tax Act, which is codified at Ala.Code 1975, § 40-14A-21 et seq. The business-privilege tax (“the BPT”) is levied “on every corporation, limited liability entity, and disregarded entity doing business in Alabama, or organized, incorporated, qualified, or registered under the laws of Alabama.” Ala.Code 1975, § 40-14A-22(a). The BPT is based on a taxpayer’s net worth in Alabama. Id. Section 40-14A-24(a), Ala.Code 1975, explains how a taxpayer’s net worth in Alabama is computed, and it states, in pertinent part, that “the net worth of insurers subject to the insurance premium tax levied by Chapter 4A of Title 27 shall be apportioned on the basis of the ratio of the insurer’s Alabama premium income to its nationwide total direct premiums as reflected on schedule T of the insurer’s annual statement filed with the Commissioner of Insurance for the then immediately preceding calendar year.”
The taxpayer computed and submitted its BPT returns for the 2008 and 2009 tax years. As instructed by § 40-14A-24(a), the taxpayer based its computations on the information contained in its Schedule T for the year immediately preceding each tax year. The taxpayer’s Schedule T for 2007 indicated that it had collected $11,571,089 in life-insurance premiums and $2,132,083,339 in annuity considerations for a “direct business” total that year of $2,143,654,428. The 2007 Schedule T indicated that the taxpayer had collected a total of $16,195,527 of its receipts in Alabama; that total comprised $1,430,160 in life-insurance premiums and $14,765,367 in annuity considerations. Thus, the taxpayer divided its total Alabama receipts of $16,195,527 by its direct-business total of $2,143,654,428, resulting in an apportionment factor for the tax year 2008 of .76%.
The taxpayer’s 2008 Schedule T indicated that its “direct business” total for that year was $2,297,516,404, which comprised $12,058,262 in life-insurance premiums and $2,285,458,142 in annuity considerations. The taxpayer’s total Alabama receipts were $12,409,039, which comprised $1,515,701 in life-insurance premiums and *1071 $10,893,338 in annuity considerations. Thus, the taxpayer computed its 2009 apportionment factor as .54%.
In 2010, the Alabama Department of Revenue (“the department”) performed a desk audit of the taxpayer’s 2008 and 2009 BPT returns, and it concluded that the taxpayer had incorrectly determined its apportionment factor for each tax year. The department recalculated the taxpayer’s apportionment factor by dividing only the life-insurance premiums collected by the taxpayer in Alabama by only the life-insurance premiums the taxpayer had collected nationwide; that is, the department excluded from the calculation all annuity considerations that the taxpayer had collected. The department based its decision to exclude annuity considerations from the calculation on the text of Ala.Code 1975, § 27-4A-2, the definition section contained in the Insurance Premium Tax Reform Act of 1993, codified at Ala.Code 1975, § 27-4A-1 et seq., which defines “premiums” to exclude “annuity considerations.” § 27-4A-2(8). The department issued final assessments determining that the taxpayer’s apportionment factor for the 2008 tax year should have been 12.36% and that the apportionment factor for the 2009 tax year should have been 12.57% and assessed additional taxes and penalties due for the 2008 and 2009 tax years.
The taxpayer appealed the final assessments to the St. Clair Circuit Court, naming as appellees the department and Julie P. Magee, as commissioner of the department (Magee and the department are hereinafter referred to collectively as “ADOR”). The taxpayer filed a motion for a summary judgment, and ADOR responded. After a hearing, the trial court entered a summary judgment in favor of the taxpayer. In its summary-judgment order, the trial court determined that the department had improperly excluded the annuity considerations in calculating the apportionment factor under § 40-14A-24(a). The trial court further concluded that, if the department had not incorrectly concluded that the annuity considerations should be excluded from the computation of the apportionment factor, “it would present serious issues under the United States Constitution, specifically the Due Process and Commerce Clauses, with respect to the imposition of the BPT as to this particular (taxpayer].” ADOR timely appealed the trial court’s judgment.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’” Lee, 592 So.2d at 1038. “(Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). The parties agree that the material facts are undisputed and that the decision in this case turns on the construction of § 40-14A-24(a).
“Certain rules of statutory construction will guide us in deciding this case:
“ ‘The fundamental rule of statutory construction is to ascertain and give *1072 effect to the intent of the legislature in enacting the statute. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the legislature should be gathered from the language of the statute itself. Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala.1978). If the statute is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the statute and examine results that will flow from giving the language in question one particular meaning rather than another. Studdard v. South Central Bell Telephone Co., 356 So.2d 139 (Ala.1978); League of Women Voters v. Renfro, supra.’
“Clark v. Houston County Comm’n, 507 So.2d 902, 903-04 (Ala.1987). In deciding between alternative meanings to be given to an ambiguous or uncertain statutory provision, we will not only consider the results that flow from assigning one meaning over another, but will also presume that the legislature intended a rational result, see State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726 (1953); Crowley v. Bass, 445 So.2d 902 (Ala.1984) (dictum); 2A N. Singer, Sutherland Statutory Construction § 45.12 (Sands 4th ed.1984), one that advances the legislative purpose in adopting the legislation, see Mobile County Republican Executive Committee v. Mandeville, 363 So.2d 754 (Ala.1978), that is ‘workable and fair,’ State v. Calumet & Hecla Consol. Copper Co., supra; Ex parte Hayes, 405 So.2d 366 (Ala.1981), and that is consistent with related statutory provisions, see Tate v. Teague, 431 So.2d 1222 (Ala.1983) (‘ “The intention of the Legislature may be determined by examining the statute as a whole” ’) (quoting and adopting the trial court’s conclusions of law).”
John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala.1988). We note “the longstanding axiom that, where the language of a taxing statute is reasonably capable of two constructions, the most favorable to the taxpayer must be adopted.” Norandal USA, Inc. v. State Dep’t of Revenue, 545 So.2d 792, 793 (Ala.Civ.App.1989).
On appeal, ADOR argues that the trial court erred in determining that the department incorrectly calculated the taxpayer’s 2008 and 2009 apportionment factors under § 40-14A-24(a) because, it insists, the definition of “premiums” in § 27-4A-2(8) applies to exclude “annuity considerations” from the calculation. This is so, argues ADOR, because, it contends, the statutes governing the BPT and the insurance-premium tax should be read in pari materia. The taxpayer argues that ADOR cannot import the definition of “premiums” from § 27-4A-2(8), which definition § 27-4A-2 clearly states is “[f]or the purposes of this chapter only,” i.e., Chapter 4A of Title 27, the Insurance Premium Tax Reform Act of 1983.'
The term “premium” is not defined in the Alabama Business Privilege Tax Act. However, that term is defined or mentioned in several parts of the Alabama Code relating to insurance other than § 27-4A-2(8). For example, Ala.Code 1975, § 27-44-5(15), which is the definition section of the Alabama Life and Disability Insurance Guaranty Association Act, codified at Ala.Code 1975, § 27-44-1 et seq., defines “premiums” as “[d]irect gross insurance premiums and annuity considerations received on covered policies or contracts, less returned premiums and considerations thereon and dividends paid or credited to policyholders on such direct business. ‘Premiums’ do not include pre *1073 miums and considerations on contracts between insurers and reinsurers.” “Premium” is defined as “[t]he consideration for insurance, by whatever name called,” in Ala.Code 1975, § 27-14-1(2). Both Ala. Code 1975, § 27-13-60(2), which provides the definitions governing casualty and surety insurance, and Ala.Code 1975, § 27-13-20(2), which provides the definitions relating to fire and inland marine insurance, define “premium” as “[t]he consideration paid or to be paid to an insurer for the issuance and delivery of any binder or policy of insurance.”[1] Although not defined in Ala.Code 1975, § 27-15-16(a), which is part of the chapter governing life-insurance and annuity contracts, see Ala.Code 1975, § 27-15-1 et seq., the term “premium” appears in a phrase in that section — “single premium annuities” — indicating that the consideration paid for an annuity is a “premium.” Thus, it appears that, under Alabama law, the term “premium” is, at times, inclusive of “annuity considerations.”
In addition, we note that the ordinary meaning of the word “premium” is “the consideration paid for a contract of insurance.” Merriam-Webster’s Collegiate Dictionary 980 (11th ed.2003). Notably, the definition of the word “premium” contains the word “consideration.” “Consideration” is ordinarily defined as “recompense, payment” or “the inducement to a contract or other legal transaction.” Merriam-Webster’s Collegiate Dictionary 266 (11th ed.2003). Thus, a premium and a consideration are, in this context, the same thing.
In support of its motion for a summary judgment, the taxpayer presented the affidavit of Jack A. Taylor, a professor of insurance law. In his affidavit, Taylor explains that the terms “annuity premiums” and “annuity considerations” are used interchangeably in the insurance industry to refer to the payments made to insurance companies to purchase an annuity. He refers to documents attached to his affidavit to demonstrate that the terms “premiums” and “considerations” are used interchangeably to refer to the payments made by an annuitant for an annuity. Included in the documentation supporting Taylor’s affidavit are publications of the National Association of Insurance Commissioners (“the NAIC”); a publication labeled “Life Insurers Fact Book 2008” from the American Council of Life Insurers; and excerpts from two texts: Kenneth Black and Harold D. Skipper, Life and Health Insurance 161-62 (13th ed.2000), and Mark S. Dorfman and David A. Cather, Introduction to Risk Management and Insurance 258-59 (10th ed. 2012) (“Risk Management”). In all the publications, the payment made by an annuitant for an annuity is referred to as a “premium”; only Dorf-man and Cather clarify that “[ajnnuity premiums technically are called considerations,” although they use the term “premium” in the text “[f]or simplicity.” Risk Management, 259.
In his affidavit, Taylor refers to the Alabama Administrative Code regulations governing annuity disclosures found at Ala. Admin. Code (Alabama Department of Insurance), r. 482-1-129-.01 et seq. Those regulations are designed to “provide standards for the disclosure of certain minimum information about annuity contracts to protect consumers and foster consumer education.” Ala. Admin. Code, r. 482-1-129-.02. Although the regulations do not define the term “premium,” the regulations do refer to the payment made for an annuity as a premium. See Ala. Admin. *1074 Code, r. 482-l-129-.04(3), (6) & (7). Furthermore, the Appendix to the regulations contains a “Buyer’s Guide to Fixed Deferred Annuities” prepared by the NAIC, which explains that “[a]n annuity is a contract in which an insurance company makes a series of income payments at regular intervals in return for a premium or premiums you have paid.” Thus, the regulations, as Taylor opines, indicate that the payments made for an annuity are, in fact, premiums under Alabama law. Ala. Admin. Code, r. 482-1-129, Appendix.
Finally, Taylor discusses in his affidavit the Schedule T form from which § 40-14A-24(a) requires the figures for the calculation of the apportionment factor be derived. On Schedule T, the first page contains the title of the form: “Schedule T — Premiums and Annuity Considerations.” The first page of the form lists the amount of money' collected in each state by the insurance company completing the form. The money collected is divided into subcategories, including two categories labeled “life insurance premiums” and “annuity considerations.” The second page of Schedule T, however, which is labeled “Schedule T — Part 2: Interstate Compact — Exhibit of Premiums Written,” contains the same information, divided into columns labeled “life” and “annuities,” but does not refer to the payments collected for annuities as “considerations.” Thus, Taylor notes, the Schedule T form itself refers to the same payments both as “premiums” and as “considerations.”
ADOR, relying on the principle that “when the highest administrative officials charged with the duty of administering the tax laws have construed a tax statute, their construction should be given favorable consideration,” argues that its interpretation of § 40-14A-24(a) should be given deference. Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003). Although a court should give deference to an agency’s interpretation of an agency rule or a statute implemented by the agency, that deference has limits. When it appears that the agency’s interpretation is unreasonable or unsupported by the law, deference is no longer due. Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996) (“[A] court accepts an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable.” (emphasis added)). As our supreme court has explained:
“The correct rule is that an administrative interpretation of the governmental department for a number of years is entitled to favorable consideration by the courts; but this rule of construction is to be laid aside where it seems reasonably certain that the administrator’s interpretation has been erroneous and that a different construction is required by the language of the statute.”
Boswell v. Abex Corp., 294 Ala. 334, 336, 317 So.2d 317, 318 (1975).
ADOR argues that the fact that the statutes governing the BPT refer to the insurance-premium tax in three separate sections supports its conclusion that the statutes, which concern different taxes administered by different state departments, should be read in pari materia. Indeed, “[i]t is a fundamental principle of statutory construction that statutes covering the same or similar subject matter should be construed in pari materia.” Ex parte Johnson, 474 So.2d 715, 717 (Ala.1985). “Statutes are in pari materia — pertain to the same subject matter — when they ... have the same purpose or object.” 2B Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 51:3 (7th ed.2012). We will review the references to the insurance-premium tax in the BPT statutes to help discern whether *1075 the statutes applicable to each of the taxes should be construed in pari materia.
The first mention of the insurance-premium tax in the statutes governing the BPT appears in the definition of “taxable year” in Ala.Code 1975, § 40-14A-l(n), which states, in pertinent part: “in the ease of an insurance company subject to the premium tax levied by Chapter 4A of Title 27, the calendar year.” The reference next appears in § 40-14A-22(d)(2), which limits the maximum tax that may be imposed and which specifically provides, in pertinent part, that
“[w]ith respect to any ... insurance company that is subject to the premium taxes levied by Chapter 4A of Title 27 ... the privilege tax levied by this article shall not exceed $3,000,000, for any taxpayer or, for a financial institution group, for the financial institution group as a whole each year except as provided in subsection (e).”
The final reference to the insurance-premium tax appears in § 40-14A-24(a) itself, as part of the direction that the net worth of insurers who are subject to the insurance-premium tax be apportioned.[2]
A reading of those statutes does not compel the conclusion that the separate statutes governing the BPT and the insurance-premium tax cover the same subject matter. The insurance-premium tax is imposed on insurers based on premiums those insurers collect for insurance contracts, and it is administered by the Department of Insurance. The BPT is a privilege tax imposed for the privilege of doing business in Alabama, and it is administered by the Department of Revenue. The BPT is assessed on the net worth of a corporation, and it is figured using an apportionment factor based on the corporation’s net worth in Alabama. The BPT is imposed on businesses other than insurers; naturally, the insurance-premium tax is imposed only on those businesses that sell insurance. The BPT and the insurance-premium tax, then, are not similar taxes, and the statutes applicable to each tax do not cover the same subject matter.
Although ADOR does not interpret the use of the word “only” in § 27-4A-2 as a bar to its decision to adopt the definition of “premiums” provided in § 27-4A-2(8) in implementing the statutes applicable to the BPT, we must give effect to every word in a statute. Surtees v. VFJ Ventures, Inc., 8 So.3d 950, 970 (Ala.Civ.App.2008). The word “only” is restrictive and is defined “[a]s a single fact or instance and nothing more or different” or “solely, exclusively.” Merriam-Webster’s Collegiate Dictionary 867 (11th ed.2003). Thus, the legislature has announced that the definitions in § 27-4A-2 are to apply solely within the confines of chapter 4A of Title 27. Neither the insurance-premium-tax statutes nor any of the references in BPT statutes to the insurance-premium tax suggest that the definition of “premiums” from § 27-4A-2(8) should be imported into the statutes applicable to the BPT.
Curtis Stewart testified as the department’s representative, and his deposition was submitted by the taxpayer to the trial court in support of the motion for a summary judgment. Stewart explained that the department’s position was that § 40-14A-24(a) requires the department to use *1076 in its calculation of the apportionment factor “the same premium income that is reported to the Commissioner of Insurance on Schedule T.” Thus, ADOR insists that the definition of “premiums” used in assessing the insurance-premium tax must apply to exclude the annuity considerations contained on Schedule T from the apportionment-factor calculation.
However, as explained above, Schedule T contains figures for both life-insurance premiums and annuity considerations, and the second page of Schedule T lists a company’s total receipts from each state as “premiums” collected by the insurance company. Section 40-14A-24(a) does not indicate that “only” life-insurance premiums or other types of insurance premiums are to be considered when calculating the apportionment factor, and the factor, once calculated, is applied to the company’s entire net worth as shown on Schedule T, which includes both insurance premiums and annuity considerations collected in every state. Because the apportionment factor is designed to reflect the taxpayer’s net worth in Alabama and because the word “apportion” is defined as “to divide and share out according to a plan; especially]: to make a proportionate division or distribution of,” Merriam-Webster’s Collegiate Dictionary 61 (11th ed.2003), it seems illogical to determine the apportionment factor based on only insurance premiums while completely ignoring the annuity considerations that form the other component of the taxpayer’s net worth.
ADOR’s interpretation, importing the restrictive definition of “premiums,” contained in § 27-4A-2(8), is not a reasonable interpretation of the language contained in § 40-14A-24(a). Because we have determined that § 40-14A-24(a) does not require that annuity considerations be omitted from the calculation of a taxpayer’s Alabama net worth, we need not consider whether such a construction of the statute might raise constitutional considerations. See Chism v. Jefferson Cnty., 954 So.2d 1058, 1063 (Ala.2006) (indicating that a court should avoid deciding constitutional issues when a case can be disposed of based on nonconstitutional issues). Accordingly, we affirm the judgment of the trial court in favor of the taxpayer.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ„ concur.

. The definition of "premium” provided in § 27-13-20(2) differs from that provided in § 27-13-60(2) only in the use of commas to set off the phrase "or to be paid” in the definition.

. ADOR also points out that an insurer is entitled to a credit against its insurance-premium tax of 60% of the BPT paid by the insurer. Ala.Code 1975, § 27-4A-3(c)(6). However, ADOR does not explain how that credit supports the conclusion that the definition of "premiums" in § 27-4A-2(8), which is expressly limited in applicability to the statutes in the chapter governing the insurance-premium tax, should be imported into the statutes governing the BPT.