Rel: December 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

———————————————

### CL-2025-0178

———————————————

**Alabama Crime Victims Compensation Commission**

**v.**

**Kenneth Thomas**

**Appeal from Montgomery Circuit Court**
**(CV-21-395)**

BOWDEN, Judge.

The Alabama Crime Victims Compensation Commission ("the ACVCC") appeals the February 25, 2025, judgment of the Montgomery Circuit Court reversing the June 17, 2021, final decision of the ACVCC ("the final decision") that denied Kenneth Thomas's claim for

compensation; the circuit court found the final decision to be arbitrary, capricious, and an unwarranted exercise of discretion. The ACVCC argues on appeal that its interpretation of the term "criminally injurious conduct" is reasonable and supports the final decision. We agree. Accordingly, we reverse the circuit court's judgment and remand the cause to the circuit court to enter a judgment affirming the final decision of the ACVCC.

Factual and Procedural History

Miriam Thomas Richardson ("the decedent") was struck and killed by a vehicle in front of her home on February 7, 2019, at approximately 6:00 a.m. Raven Shealey ("the driver") was arrested in connection with the decedent's death and charged with leaving the scene of an accident resulting in injury or death pursuant to Ala. Code 1975, § 32-10-1(a). See Ala. Code 1975, § 32-10-6 ("Every person convicted of violating Sections 32-10-1 through 32-10-5[, Ala. Code 1975,] or any of the provisions thereof … when such violation involved death or personal injury, shall be punished the same as prescribed by law for a Class C felony.").

On January 14, 2020, Thomas, the decedent's brother, submitted a compensation claim for the decedent's funeral expenses to the ACVCC

2

under the Alabama Crime Victims Compensation Act ("the Act"), Ala. Code 1975, § 15-23-1 et seq. The ACVCC denied Thomas's claim on March 11, 2021; the ACVCC's denial listed the reason for denying his claim as "Non-Criminally Injurious Conduct."

On April 8, 2021, Thomas timely hand-delivered a notice of appeal to the ACVCC regarding its March 11, 2021, decision denying his claim. The ACVCC set the matter for an administrative-appeal hearing, which was held on June 11, 2021 ("the administrative hearing").

Cynthia Smith, a crime victims' specialist for the ACVCC, testified at the administrative hearing that she had investigated Thomas's claim. Smith testified that she had recommended that the ACVCC deny Thomas's claim. Smith testified that leaving the scene of an accident is not a crime for which the ACVCC can provide compensation under the Act "[b]ecause in leaving the scene of an accident, the crime occurs after the victim has been injured."

Timothy A. Bradley, a lieutenant with the Montgomery Police Department who supervises the Traffic Homicide Team, also testified at the administrative hearing. Bradley testified that he was the supervisor that responded to the scene of the accident. Bradley testified that the

3

driver had been identified and charged with leaving the scene of the accident. Bradley testified that the decedent was "[a] victim of a tragic car accident" and that he had no reason to believe that a crime other than leaving the scene of the accident had occurred. Bradley testified that he was unable to testify about the investigation because the criminal case against the driver was pending before a grand jury at the time of the administrative hearing.

Samantha Stephenson, the chief victim-service officer for the Montgomery County district attorney's office, testified at the administrative hearing that she was unable to testify about the district attorney's ongoing investigation.

Thomas was permitted to provide a statement at the administrative hearing. Thomas noted that leaving the scene of an accident involving injury or death is a Class C felony punishable by up to 10 years' incarceration. Thomas made the following statement at the administrative hearing:

> "Can you image [sic] that [the driver] is convicted and sentenced to six years in prison? She was not involved in an act that was criminal?
>
> "And so, I think that's the point that I would like to emphasize, that this was criminal injurious conduct. [The

4

driver] can possibly be imprisoned for a lengthy period of time for leaving the scene of an accident that caused a death. And I think that that's where my -- that's the thrust of my argument."

The ACVCC entered the final decision on June 17, 2021, denying Thomas's claim for compensation under the Act. The ACVCC noted that it had made the final decision by majority vote in the administrative hearing and made the following findings of fact:

"1.    On February 7, 2019, at approximately 6:00 am, the decedent … was in the street in front of her home on W. Edgemont Avenue in Montgomery, Alabama.

"2.    [The decedent] was struck by a car while in the street. The driver of the car left the scene of the accident.

"3.    [The driver] was later arrested for the incident. [The driver] was charged with leaving the scene of an accident pursuant to section 32-10-1 of the Code of Alabama. [The driver]'s leaving the scene of an accident charge is an active case being prosecuted by the Montgomery County District Attorney's Office.

"4.    The March 11, 2021, non-approved decision due to a finding of non-criminally injurious conduct is affirmed. A finding of non-criminally injurious conduct is made because the alleged offender was charged with leaving the scene of accident. The alleged criminal activity occurred after the decedent sustained injury."

Thomas timely hand-delivered a notice of appeal of the final decision to the ACVCC on July 16, 2021. Thomas then timely filed a

5

petition to the circuit court for judicial review of the final decision on August 12, 2021.

The ACVCC filed a motion for a summary judgment in the circuit court on September 10, 2021. In its motion for a summary judgment, the ACVCC argued that it had "correctly applied the concept of criminally injurious conduct as defined by [the Act] to the facts of [the decedent's] death" when it denied Thomas's claim for compensation and that its final decision "is consistent with [the Alabama Administrative Procedure Act] guidelines." The ACVCC acknowledged that the driver had been charged with leaving the scene of an accident involving serious injury or death. However, the ACVCC argued that the decedent's death was the result of an <u>accident</u> and that the driver was not alleged to have committed a criminal act until <u>after</u> the accident had occurred.

Thomas filed a motion styled as "petitioner's cross-motion for summary judgment and response to [the ACVCC's] motion for summary judgment" on September 24, 2021. In his motion, Thomas argued that the ACVCC had misinterpreted the Act's definition of criminally injurious conduct. Thomas argued that "it's the death of [the decedent] which resulted from the 'act' of [the driver] hitting her and leaving the

6

scene that constitutes the 'CRIMINALLY INJURIOUS CONDUCT' under [the Act]." (Capitalization in original.)

Thomas filed a motion styled as "petitioner's motion to add to the record" on July 13, 2022, attaching documents as exhibits thereto regarding the driver's conviction and sentencing for the crime of leaving the scene of the accident involving injury or death. The ACVCC did not object to Thomas's motion or move to strike Thomas's exhibits.[1]

---

[1]Generally, when reviewing the final decision of an agency, the circuit court may not consider evidence regarding a factual issue that was not presented at the administrative hearing. Ala. Code 1975, § 41-22-20(i) ("In proceedings for judicial review of agency action in a contested case, except where appeal or judicial review is by a trial de novo, a reviewing court shall not itself hear or accept any further evidence with respect to those issues of fact whose determination was entrusted by law to the agency in that contested case proceeding ….").

In this case, the evidence regarding the driver's conviction and sentencing was not presented at the administrative hearing because the driver had not yet been convicted and sentenced. See Ala. Code 1975, § 15-23-13 (Under the Act, "[p]roof of conviction of a person whose acts give rise to a claim is conclusive evidence that the crime was committed ….").

There is nothing in the record that suggests that the ACVCC objected to the introduction of this evidence, and the ACVCC does not raise this as an issue on appeal. Therefore, we need not address whether the circuit court erred by considering evidence that was not presented at the administrative hearing. See Messer v. Messer, 621 So. 2d 1343, 1344 (Ala. Civ. App. 1993) ("Failure by an appellant to argue an issue in its brief waives that issue and precludes it from consideration on appeal.").

On April 25, 2024, the circuit court entered an order setting the matter for a status hearing on June 12, 2024. On September 20, 2024, the circuit court entered an order setting the matter for another status hearing on October 16, 2024. There is no evidence in the record regarding what happened at the June 12, 2024, and October 16, 2024, status hearings.

On January 7, 2025, the circuit court entered an order setting the matter for another status hearing on February 18, 2025, and to consider all pending motions before it. The ACVCC provided a transcript of the February 18, 2025, hearing as part of the record on appeal.

In the February 18, 2025, hearing, the circuit court disagreed with the ACVCC's interpretation of the term "criminally injurious conduct" and expressed concern with its application of its interpretation to Thomas's claim. The following colloquy took place during the February 18, 2025, hearing:

> "The Court: Was this a violation of the Criminal Code?
>
> "[Counsel for the ACVCC]: It was.
>
> "….
>
> "[Counsel for the ACVCC]: But all crimes don't meet the definition of criminal injurious conduct.

"The Court: Okay. Now we're getting there. Now we're getting somewhere. All right. But a person died as a result of being, I guess, struck by a car?

"[Counsel for the ACVCC]: That's correct, Your Honor.

"The Court: Did they suffer an injury?

"….

"[Counsel for the ACVCC]: They had serious, physical injuries; yes, Your Honor.

"The Court: Does that fall within your definition?

"[Counsel for the ACVCC]: No, it doesn't.

"The Court: Why not?

"[Counsel for the ACVCC]: Car accidents do not fall within the definition.

"….

"The Court: I got the [ACVCC]'s position, but I just don't get it. I don't understand how you could not call this a crime.

"[Counsel for the ACVCC]: Leaving the scene of the accident is certainly a crime, but it's not criminally injurious conduct.

"The Court: Somebody died, ma'am. This is not a fender bender. I could understand it if, you know, you knock down a utility pole and left the scene, but somebody died.

"[Counsel for the ACVCC]: Criminally injurious conduct has a very narrow definition --

"….

"The Court: Now, I could see you, if the facts supported just leaving the scene of an accident, taking the position that you take. I would support you in that. But this is not what she was charged with. She was charged with leaving the scene of an accident with injury, which makes it a Class C felony. That makes it a crime, doesn't it? Doesn't it?

"[Counsel for the ACVCC]: It is a crime, Your Honor --

"….

"[Counsel for the ACVCC]: -- but it's not criminally injurious conduct.

"The Court: It is when somebody dies. I don't understand.

"….

"The Court: [The driver] [s]hould have been charged with some kind of reckless driving, reckless endangerment. Now, if the person had died instantly, [the driver] could have been charged with vehicular manslaughter. …

"….

"[Counsel for the ACVCC]: Certainly, [leaving the scene of an accident with injuries is] a crime, but it's not criminally injurious conduct. And that's what's been the issue.

"The Court: Now, that's some dressed up term, but you strip it down. Okay? The criminally -- the root word is crime. Isn't it?

"….

"The Court: All right. I'm going to rule in favor of [Thomas] and find that the [ACVCC] has acted arbitrary and capricious, and its judgment is not substantiated by the law.

10

You-all can submit proposed orders if you want to, but that's the ruling of the Court. ...."

The circuit court entered the judgment on February 25, 2025, reversing the final decision of the ACVCC. In support thereof, the circuit court made the following findings of fact and conclusions of law:

"Upon consideration [of] the Cross Motions for Summary Judgment, a review of the Administrative Record, the arguments of the Parties and the applicable law, the court finds that the Decision of the ACVCC is ARBITRARY, CAPRICIOUS and a CLEARLY UNWARRANTED exercise of discretion. Therefore, the premises considered the court reverses the decision of the ACVCC for the following reasons.

"The alleged criminal activity caused the decedent to sustain[] an 'injury.' Petitioner asserts that the Final Order misinterprets § 15-23-3(2)a, which provides;

"'(2) CRIMINALLY INJURIOUS CONDUCT. Criminally injurious conduct includes any of the following acts:

"'(a) An act occurring or attempted within the geographical boundaries of this state which results in serious personal injury or death to a victim for which punishment by fine, imprisonment, or death may be imposed.' …

"The facts are undisputed that [the decedent] was struck by a car on February 7, 2019, in front of her home in Montgomery, Alabama, which resulted in her death; and a person was prosecuted and convicted for leaving the scene of an accident pursuant to Section 32-10-1, Code of Alabama. This case was prosecuted by the Montgomery County District Attorney's Office.

11

"According to Section 32-10[-]6, Code of Alabama 1975, 'every person convicted of violating [Section 32-10-1] or any provisions thereof <u>when such violation involved death</u> or personal injury, shall be punished the same as prescribed by law for a Class C felony.' …

"Moreover, Section 13A-5-6(a)(3), Code of Alabama, provides for a sentence for imprisonment for a 'Class C felony, of not more than 10 years or less than 1 year and 1 day ….' The circumstances herein clearly establish '<u>criminally</u> <u>injurious conduct</u>' as defined in Section 15-23-3(2)a, Code of Alabama 1975, under [the Act].

"The premises considered the Court … reverses the decision of the [ACVCC] dated June 17, 2021, and order[s] that the claim as to funeral expenses be paid in the amount of $7,000.00."

(Capitalization and emphasis in original.)

The ACVCC timely appealed the judgment on March 7, 2025. See Ala. Code 1975, § 41-22-21 ("An aggrieved party may obtain a review of any final judgment of the circuit court under Section 41-22-20[, Ala. Code 1975,] by appeal to the appropriate court to which the appeal or review lies. The appeal shall be taken within 42 days of the date of the entry of the judgment or order appealed from ….").

Standard of Review

"This court reviews a circuit court's judgment as to an agency's decision without a presumption of correctness because the circuit court is in no better position to review the agency's decision than is this court."

Affinity Hosp., LLC v. St. Vincent's Health Sys., 129 So. 3d 1022, 1025 (Ala. Civ. App. 2012).

"'We review questions of statutory construction and interpretation de novo, giving no deference to the trial court's conclusions.'" Scott v. Alabama Dep't of Revenue, [Ms. SC-2025-0013, June 13, 2025] ___ So. 3d ___, ___ (Ala. 2025) (quoting Pitts v. Gangi, 896 So. 2d 433, 434 (Ala. 2004)).

Under the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975, the final decision of an agency, such as the ACVCC, "shall be taken as prima facie just and reasonable" and may be reversed or modified if the court finds that the agency action is "[u]nreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." Ala. Code 1975, § 41-22-20(k). A court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute." Id.

A court reviewing the final decision of an agency must defer to an agency's reasonable interpretation of a statute that it administers. Ex parte Chesnut, 208 So. 3d 624, 640 (Ala. 2016) ("[A] reviewing court will

accord an interpretation placed on a statute or an ordinance by an administrative agency charged with its enforcement great weight and deference."); see <u>Ex parte State Dep't of Revenue</u>, 683 So. 2d 980, 983 (Ala. 1996) ("[I]n interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable.").

"This court has held that a decision cannot be said to be 'arbitrary' where there is a reasonable justification for the decision or where the determination is founded upon adequate principles or fixed standards." <u>Alabama Dep't of Pub. Health v. Perkins</u>, 469 So. 2d 651, 652 (Ala. Civ. App. 1985). "'"'"[A] decision is capricious if it is so unreasonable as to 'shock the sense of justice and indicate lack of fair and careful consideration.'"'"'" <u>Alabama Dep't of Youth Servs. v. State Pers. Bd.</u>, 7 So. 3d 380, 386 (Ala. Civ. App. 2008) (quoting <u>Alabama Dep't of Hum. Res. v. Dye</u>, 921 So. 2d 421, 427 (Ala. Civ. App. 2005), quoting in turn <u>Westring v. James</u>, 71 Wis. 2d 462, 476-77, 238 N.W.2d 695, 702-03 (1976), quoting in turn <u>Scharping v. Johnson</u>, 32 Wis. 2d 383, 390, 145 N.W.2d 691, 695 (1966)).

## Analysis

The ACVCC argues that the final decision denying Thomas's claim for compensation under the Act was not arbitrary, capricious, or a clearly unwarranted exercise of discretion. The ACVCC argues that its plain-language interpretation of the term "criminally injurious conduct" and the evidence in the record support its conclusion that the decedent's death was not compensable under the Act. We agree that the ACVCC's decision was not arbitrary, capricious, or a clearly unwarranted abuse of discretion.

I.    The source of the ACVCC's authority to award compensation to victims of criminally injurious conduct

The legislature enacted the Act with the express intent "to provide a means whereby victims of violent crime and their dependents may be provided compensation in the amount of actual expenses incurred as a direct result of criminal acts of other persons." § 15-23-2, Ala. Code 1975. To carry out the legislature's intent, the Act created the ACVCC to "award compensation for economic loss arising from criminally injurious conduct if satisfied by a preponderance of the evidence that the requirements for compensation have been met." § 15-23-8(a), Ala. Code 1975 (emphasis added).

The Act defines "economic loss" as "[m]onetary detriment consisting only of allowable expense, work loss, replacement services loss and, if injury causes death, economic loss and replacement services loss of a dependent ...." § 15-23-3(11), Ala. Code 1975. An "allowance expense," among other charges, includes up to $7,000 for expenses related to the funeral, cremation, or burial of a victim.[2] § 15-23-3(6), Ala. Code 1975. The Act defines "criminally injurious conduct" to include any of the following acts:

> "a. An act occurring or attempted within the geographical boundaries of this state which results in serious personal injury or death to a victim for which punishment by fine, imprisonment, or death may be imposed.

> "b. An act occurring or attempted outside the geographical boundaries of this state ... which is punishable by fine, imprisonment, or death and results in personal injury or death to a citizen of this state, and shall include an act of terrorism, as defined in Section 2331 of Title 18, United States Code, committed outside the United States, against a resident of this state; provided however, the citizen at the time such act was committed had a permanent place of residence within the geographical boundaries of this state, and in addition thereto that [the citizen satisfies any of the specific circumstances listed].

---

[2]No more than $5,000 may be paid for expenses related to the funeral, cremation, or burial of a victim as the result of criminally injurious conduct that occurred on or after July 9, 2020. Ala. Admin. Code (Crime Victims Comp. Comm'n), r. 262-X-1.01(5)(h).

16

"The term 'criminally injurious conduct' shall not mean: An act committed outside the geographical boundaries of this state upon a person who was not at the time a citizen of Alabama, or an act committed outside the geographical boundaries of this state upon a person who at the time had departed the geographical boundaries of this state for the purpose of becoming a citizen of, or establishing a permanent place of residence in, another state."

Ala. Code 1975, § 15-23-3(2); see Ala. Admin. Code (Crime Victims Comp. Comm'n), r. 262-X-1-.01(5)(b)(defining "criminally injurious conduct" using substantially the same language as § 15-23-3(2)).

The ACVCC may award compensation to a victim regardless of whether any person has been prosecuted or convicted of committing the criminally injurious conduct giving rise to the victim's claim for compensation. § 15-23-13, Ala. Code 1975. However, "[p]roof of conviction of a person whose acts give rise to a claim is conclusive evidence that the crime was committed …." Id.

II.  The ACVCC's conclusion that the driver's act of leaving the scene of the accident was not criminally injurious conduct was not arbitrary, capricious, or a clearly unwarranted abuse of discretion

The ACVCC argues that it denied Thomas's claim for compensation under the Act based on a plain-language interpretation of the term "criminally injurious conduct." We conclude that the ACVCC's interpretation of the term "criminally injurious conduct" is reasonable,

17

and we decline to expand that term to include leaving the scene of an accident involving injury or death in lieu of a plain-language understanding of that term under the Act.

As we have stated, because the question at issue here is one of statutory construction and interpretation, our standard of review is de novo, see Scott v. Alabama Dep't of Revenue, ___ So. 3d at ___, and we must defer to the ACVCC's interpretation of the Act unless its interpretation is unreasonable or arbitrary. See Ex parte State Dep't of Revenue, 683 So. 2d at 983.

"'In any case involving statutory construction, our inquiry begins with the language of the statute.'" Scott, ___ So. 3d at ___ (quoting Ex parte McCormick, 932 So. 2d 124, 132 (Ala. 2005)).

> "'The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute. Gholston v. State, 620 So. 2d 719 (Ala. 1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says.'
>
> "Ex parte State Dep't of Revenue, 683 So. 2d 980, 983 (Ala. 1996)."

18

Pruitt v. Oliver, 331 So. 3d 99, 111 (Ala. 2021).

The relevant portion of the Act's definition of criminally injurious conduct is as follows: "An act occurring or attempted within the geographical boundaries of this state which results in serious personal injury or death to a victim for which punishment by fine, imprisonment, or death may be imposed." § 15-23-3(2)a. The ACVCC interprets the Act's definition to require a single act that satisfies three elements contained in the definition -- the act must: (1) occur within the geographic boundaries of the state; (2) result in the serious personal injury or death to a victim; and (3) be punishable by fine, imprisonment, or death.

Applying its interpretation of the Act to the facts in this case, the ACVCC concluded that the driver's act of leaving the scene of the accident was "non-criminally injurious conduct." In the administrative hearing, the ACVCC stipulated that the driver had been charged in Montgomery County with violating § 32-10-1. By stipulating to those facts, the ACVCC implicitly recognized that the driver's act of leaving the scene of the accident satisfied the first and third elements of the Act's definition of criminally injurious conduct. The ACVCC concluded, however, that the driver's act of leaving the scene of the accident did not satisfy the second

element of the Act's definition of criminally injurious conduct -- i.e., it concluded that leaving the scene of the accident was not an act that resulted in serious personal injury or death to the decedent. Accordingly, the ACVCC found that the driver's act of leaving the scene of the accident was "non-criminally injurious conduct."

The circuit court disagreed with the ACVCC's interpretation of the term "criminally injurious conduct." The circuit court emphasized during the February 18, 2025, hearing that the decedent had died and that the driver had been charged with a crime related to the accident. The following colloquy took place during the February 18, 2025, hearing:

"The Court: Someone died, ma'am. How injurious could that be?

"….

"The Court: … [T]his was a criminal case, which makes [the decedent] a crime victim.

"….

"The Court: Now, I could see you, if the facts supported just leaving the scene of an accident, taking the position that you take. I would support you in that. But this is not what she was charged with. She was charged with leaving the scene of an accident with injury, which makes it a Class C felony. That makes it a crime, doesn't it? Doesn't it?

"[Counsel for the ACVCC]: It is a crime, Your Honor --

20

"The Court: Yeah.

"[Counsel for the ACVCC]: -- but it's not criminally injurious conduct.

"The Court: It is when somebody dies. I don't understand."

The ACVCC's interpretation of the term "criminally injurious conduct" aligns with the legislature's intent to provide compensation to victims of violent crimes for expenses "incurred as a direct result of criminal acts of other persons." § 15-23-2 (emphasis added). The word "result," the operative verb in the Act's definition of criminally injurious conduct, means "[t]o be a physical, logical, or legal consequence; to proceed as an outcome or conclusion." Result, Black's Law Dictionary 1576 (12th ed. 2024). By using the word "result," the legislature did not express an intent to compensate victims of accidents or all victims of all crimes. Instead, the legislature specified the circumstance in which victims may receive compensation for expenses caused by criminal acts; specifically, when the victim's expenses are the "logical consequence" of the criminal acts.

Injury or death is not a logical consequence of the act of leaving the scene of an accident in which death or injury has occurred. Instead, the act of leaving the scene of an accident in which death or injury has

occurred necessarily presumes that the injury or death occurred <u>before</u> the act of leaving the scene. Accordingly, the ACVCC's interpretation of the term "criminally injurious conduct," when applied to the facts of this case, is consistent with the plain and ordinary meaning of "criminally injurious conduct" as used in the Act.

Unlike the Act, some victims' compensation statutes from other states expressly include leaving the scene of an accident involving injury or death as a part of their definition of criminally injurious conduct.[3] For

---

[3]Based on a 50-state survey of victims' compensation acts, 14 other states' acts also use the term "criminally injurious conduct." Of those 14 states, the acts in 11 states define criminally injurious conduct to include leaving the scene of an accident involving injury or death. Arkansas (Ark. Code Ann. § 16-90-703(5)), Idaho (Idaho Code Ann. § 72-1003(4)(d)), Kansas (Kan. Stat. Ann. § 74-7301(e)), Kentucky (Ky. Rev. Stat. Ann. § 49.280(3)), Mississippi (Miss. Code Ann. § 99-41-17(1)), North Carolina (N.C. Gen. Stat. Ann. § 15B-2(5)), North Dakota (N.D. Cent. Code Ann. § 54-23.4-01), Ohio (Ohio Rev. Code Ann. § 2743.51(C)(1)), Oklahoma (Okla. Stat. Ann. tit. 21, § 142.3.5.a), Texas (Tex. Code Crim. Proc. Ann. art. 56B.003(4)), and West Virginia (W. Va. Code Ann. § 14-2A-3(c)).

The victims' compensation acts in two states, like Alabama, use the term "criminally injurious conduct" but do not specifically classify leaving the scene of an accident involving injury or death as criminally injurious conduct. Montana (Mont. Code Ann. § 53-9-103(3)), and Utah (Utah Code Ann. § 63M-7-502(9)(a)). The term "criminally injurious conduct" is not defined in Arizona's act, see Ariz. Rev. Stat. Ann. § 41-2407, but the term is defined in its administrative code and does not specifically classify leaving-the-scene crimes as criminally injurious conduct. Ariz. Admin. Code (Crime Victim Comp. Program), r. 10-4-201.2. Unlike the Act in our

instance, Mississippi's victims' compensation statute provides that compensation shall not be awarded if the victim was injured as a result of the operation of a motor vehicle "<u>unless</u> the vehicle was used by the offender … (iii) in a hit-and-run accident by leaving the scene of an accident …." Miss. Code Ann. § 99-41-17(1)(g) (emphasis added); see also Ky. Rev. Stat. Ann. § 49.280(3) (defining "criminally injurious conduct" to exclude the operation of a motor vehicle in violation of the law "<u>unless</u> the injury or death … involved the operator of a vehicle in an accident who did not stop and disclose his or her identity as required by [Ky. Rev. Stat. Ann.] § 189.580 …." (emphasis added)); Idaho Code Ann. § 72-1003(4)(d)(providing that "<u>criminally injurious conduct shall include violations of the provisions of section</u> … <u>18-8007</u> [duties of a driver involved in an accident that resulted in the injury or death of a person], Idaho Code." (emphasis added)).

The fact that several states have specifically incorporated leaving the scene of an accident involving injury or death into their definitions of

---

state, the acts in Montana and Utah and Arizona's administrative code generally exclude any act arising out of the ownership, maintenance, or use of a motor vehicle from their definitions of criminally injurious conduct but include some exceptions that may apply to leaving-the-scene crimes under specific circumstances.

the term "criminally injurious conduct" indicates deliberate choices by those respective state legislatures to include leaving-the-scene crimes in defining that term. See Pruitt, 331 So. 3d at 111. Our legislature has not chosen to specifically include leaving the scene of an accident involving injury or death in the Act's definition of criminally injurious conduct, and the ACVCC's plain-language interpretation of that term is reasonable. Accordingly, we decline to expand the definition of criminally injurious conduct to include leaving the scene of an accident involving injury or death in lieu of a plain-language understanding of that term under the Act. See DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270, 276 (Ala. 1998)(holding that to look beyond the words of a statute to say what the law should be rather than what the law is would be inconsistent with the doctrine of separation of powers).

III.  The ACVCC reasonably concluded that the decedent's death was the result of an accident

The ACVCC also denied Thomas's claim for compensation because it found the decedent's death to be the result of an accident rather than criminally injurious conduct. The circuit court, however, found that "alleged criminal activity caused the decedent to sustain[] an 'injury.'" The circuit court stated during the February 28, 2025, hearing that the

24

driver "[s]hould have been charged with some kind of reckless driving, reckless endangerment," and that, if the decedent had died instantly, the driver "could have been charged with vehicular manslaughter." We conclude that the ACVCC's finding that the decedent's death was the result of an accident was reasonable, and we decline to substitute our own judgment as to this question of fact.

Counsel for the ACVCC stated at the administrative hearing that it had relied on the fact that the driver had not been charged with a crime for striking the decedent with her vehicle when it denied Thomas's claim:

> "[B]ased on the way that [the driver] is charged, with leaving the scene of an accident, the only thing that we can really conclude from that is that [the decedent] was the victim of an accident, which is a civil issue, civil liability, because she's not charged with murder or manslaughter or even criminally negligent homicide. … "

Lieutenant Bradley testified at the administrative hearing that the decedent was "[a] victim of a tragic car accident," and he had no reason to believe that a crime other than leaving the scene of the accident had occurred.

As stated above, the Act gives the ACVCC discretion to award compensation regardless of whether a person is prosecuted or convicted of a crime giving rise to a claim. § 15-23-13. In this case, the ACVCC

elected not to exercise that discretion and concluded that the decedent's death was the result of an accident because the driver had not been charged with a crime for the act of striking the decedent with her vehicle.

It is not the role of a court in reviewing an agency's action to reweigh the evidence and substitute its own judgment, except when otherwise authorized by statute. § 41-22-20(k). Accordingly, we decline to do so here.

## Conclusion

Based on the foregoing, we conclude that the ACVCC's interpretation of the term "criminally injurious conduct" is reasonable. We also conclude that the ACVCC's finding that the decedent's death was the result of an accident was reasonable, and we decline to substitute our own judgment for that of the ACVCC regarding that question of fact. Accordingly, we reverse the circuit court's judgment and remand the cause to the circuit court to enter an order affirming the ACVCC's final decision in accordance with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Edwards and Hanson, JJ., concur.

Fridy, J., concurs specially, with opinion.

FRIDY, Judge, concurring specially.

I concur fully in the main opinion. I write specially to make two points. First, the main opinion quotes <u>Pruitt v. Oliver</u>, 331 So. 3d 99, 111 (Ala. 2021), for the proposition that "'[t]he cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute.'" ___ So. 3d at ___. I do not take issue with the main opinion's reliance on <u>Pruitt</u>, as that case is binding precedent. <u>See</u> § 12-3-16, Ala. Code 1975. However, as I wrote specially in <u>Alabama Department of Public Health v. TSTL Holdings, LLC</u>, [Ms. CL-2024-0604, Apr. 25, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025) (Fridy, J., concurring specially), I do not believe that, when interpreting a statute, a court should be tasked with determining "legislative intent," and I again encourage our supreme court to overrule those precedents that require a court to engage in such an inquiry.

Second, the main opinion correctly notes that a reviewing court gives deference to an agency's interpretation of a statute that the agency is charged with administering. <u>See</u> <u>Ex parte State Dep't of Revenue</u>, 683 So. 2d 980, 983 (Ala. 1996) ("[I]n interpreting a statute, a court accepts

27

an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable."). Although I am doubtful that the principle of judicial deference to agency interpretation will survive much longer in Alabama law, see Ex parte TheraTrue Alabama, LLC, [Ms. SC-2025-0006, Oct. 31, 2025] ___ So. 3d ___ (Ala. 2025) (McCool, J., concurring specially) (encouraging parties in future cases to raise the issue whether the principle of judicial deference to agency interpretation of statutes should be overruled); cf. Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024) (overruling Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)), we are, at present, bound by precedent adopting and applying that principle, see § 12-3-16, Ala. Code 1975.